COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.  30764-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | FOR RECONSIDERATION |
| STEVEN M. SWINFORD, | ) | AND WITHDRAWING OPINION |
| | ) | FILED MARCH 18, 2014 |
| Appellant. | ) | |

THE COURT has considered appellant's motion for reconsideration, and is of the opinion the motion should be granted.  Therefore,

IT IS ORDERED, the motion for reconsideration of this court's decision of March 18, 2014 is hereby granted.

IT IS FURTHER ORDERED, the court's opinion filed March 18, 2014 is hereby withdrawn and a new opinion will be filed this day.

DATED:  June 3, 2014.

PANEL:  Judges Siddoway, Brown, Fearing.

FOR THE COURT:

_____
LAUREL H. SIDDOWAY, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 30764-6-III |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN M. SWINFORD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Steven Swinford was convicted of second degree murder for the shooting death of his friend after the jury rejected his claim of self-defense. He appeals, arguing that the prosecutor committed misconduct by referring to Mr. Swinford owing a "duty of care" to the victim and that the trial court erred in denying him a new trial on that account. He also challenges the trial court's order that he undertake substance abuse evaluation and treatment as a condition of community custody and, in a statement of additional grounds, raises several additional issues.

After the conclusion of the usual briefing, Mr. Swinford moved for leave to raise an additional issue, contending that the procedure by which the parties exercised peremptory challenges to potential jurors had violated his right to a public trial. We granted his motion and address that supplemental issue as well.

The prosecutor's reference to a "duty of care" strayed from the language of the legal elements and from the court's instructions. But the gist of his argument was that Mr. Swinford's actions were not "reasonable" conduct qualifying as self-defense. If improper, the argument was not ill intentioned and, if prejudicial, could have been cured by a timely objection and instruction. The trial court did not err in denying a new trial.

Mr. Swinford correctly argues that the court's order requiring substance abuse treatment was not supported by a necessary finding that he has a chemical dependency that contributed to his offense. But since evidence from the record could support such a finding and the sentencing court appears to have viewed alcohol abuse as contributing to the offense, the appropriate remedy is to remand so that the trial court can determine whether to strike the condition or make the required finding.

Mr. Swinford's challenge to the peremptory challenge procedure followed in the trial court fails in light of *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209, *petition for review filed*, No. 89619-4 (Wash. Dec. 9, 2013), in which we held that neither prong of the experience and logic test suggests that the exercise of peremptory challenges must take place in public. The issues raised in the statement of additional grounds are without merit. We therefore affirm the conviction and remand for the limited purpose of addressing the inadequate support for the community custody condition.

## FACTS AND PROCEDURAL BACKGROUND

After a day of target shooting, Mr. Swinford, his roommate Jessy Juarez, and their

2

friend Paul Raney returned to the home where Mr. Swinford lived with Mr. Juarez and Steven Flick. There, Mr. Swinford, Mr. Raney, and Mr. Flick watched a movie, drank mixed drinks, and played drinking games, while Mr. Juarez went upstairs to bed. Eventually, Mr. Swinford and Mr. Raney began arguing over a portable media player on which the three had been playing music and whose battery was depleted. Specifically, they debated whether to plug the media player into the stereo and continue listening to music, or to plug it into a game console to be recharged. Mr. Flick would later testify that both Mr. Raney and Mr. Swinford liked to be right and that they would often quarrel over such matters.

At some point in the argument, Mr. Swinford turned off the game console in order to move the media player to the stereo. Mr. Raney then leaned forward in the chair in which he was sitting, reaching for the remote control for the game console in order to turn it back on. At the same time, he told Mr. Swinford to "[s]top being a fucking badass" all the time. Report of Proceedings (RP) at 281, 266. Mr. Swinford then shot Mr. Raney seven times, using a .45 caliber gun that had been left lying on the coffee table. Mr. Raney sustained gunshots to his chest, abdomen, pelvis, right arm, and left hand. A bullet that went through his heart and the spinal cord proved fatal.

After the shooting, Mr. Swinford and Mr. Flick called 911. The dispatcher told

3

Mr. Flick to move Mr. Raney to the floor and start CPR.[1] Mr. Juarez, a volunteer firefighter who had been trained in emergency medicine, had by that time come downstairs, awakened by the gunshots. He checked for Mr. Raney's pulse several times but could not find it and quickly concluded that he was dead.

Mr. Swinford was charged with second degree murder and defended on the basis that he shot Mr. Raney in self-defense. He testified that as Mr. Raney angrily made his "badass" comment, Mr. Swinford saw Mr. Raney's hand wrap around the grip of a pistol that was tucked in his chair. Fearing that he was going to be shot and with only a split second to make a decision, Mr. Swinford claimed he reached for a pistol on the coffee table, closed his eyes, and shot. Detectives who searched the living room following the shooting observed a .40 caliber pistol tucked between the right armrest and seat cushion of the chair Mr. Raney had been sitting in.

Mr. Flick, the only witness to the shooting other than Mr. Swinford, testified at trial that just before the shooting, Mr. Raney was leaning forward, apparently to reach the controller for the video game console. He testified that Mr. Raney was not acting angry at the time he called Mr. Swinford a "badass," that he did not raise the tone of his voice, and that "[h]e was just talking at [Mr. Swinford]." RP at 281. Anticipating further bickering between the two, Mr. Flick turned away to pick up and drink from a glass of beer when he heard a cocking noise, followed by shots. After the shooting, Mr. Flick

---

[1] Cardiopulmonary resuscitation.

4

heard Mr. Swinford tell the 911 operator that "he had shot his friend and that he was going away for a long time." RP at 270.

Mr. Juarez also testified that as they attempted to treat Mr. Raney following the shooting, Mr. Swinford told him that he did not know why he shot Mr. Raney, and was going to jail.

Mr. Swinford's first trial ended in a mistrial after the jury was unable to reach a verdict. In the trial below, a second jury rejected his theory of self-defense and found him guilty as charged. Mr. Swinford moved for a new trial, claiming that the prosecutor committed misconduct by misstating the law during closing argument. The motion was denied. Mr. Swinford was sentenced to 22 years' imprisonment and 36 months of community custody, with a condition to the community custody being that he undergo an evaluation for treatment for substance abuse. He appeals.

## ANALYSIS

Mr. Swinford makes three assignments of error on appeal: first, that prosecutorial misconduct denied him a fair trial; second, that the trial court erred in denying his motion for a new trial based on the alleged misconduct; and third, that the trial court erred in ordering him to participate in a substance abuse evaluation and undergo treatment as a condition of community custody. Supplementally, he contends that the procedure followed for exercising peremptory challenges to potential jurors violated his public trial right.

5

We first address the two assignments related to the alleged prosecutorial misconduct and then turn to the community custody condition and the public trial issue.

### I. Prosecutorial Misconduct

At issue as alleged misconduct are the italicized statements made by the prosecutor during a portion of closing argument:

> But Instruction Number 17 is in his defense, it says, it's a defense to the murder or manslaughter if the homicide was justifiable. And you need to determine this. The State has the burden to prove it wasn't justifiable. But there's three different parts to that and the third part, it says, the slayer employed such force and means as a reasonably prudent person would use under the same or similar circumstances—or conditions as they reasonably appeared to the slayer, taking into consideration all facts and circumstances as they appeared to him at the time of and prior to the incident. *Certainly, he owes a duty of care to his best friend inside this house. And when he pulls the trigger, he ignores that.* The State only has to disprove one of those three.

RP at 599 (emphasis added). Mr. Swinford contends that the harm of the argument was aggravated because the prosecutor had earlier referred to a "duty of care" when questioning him, asking if he had "us[ed] care" before shooting Raney. *Id.* at 558. The prosecutor also asked, "You didn't owe your friend a duty of care?" to which Mr. Swinford responded, "I don't know." *Id.* at 572. No objection was made in the trial court to the argument or questioning about a duty of care.

An appellant bears the burden of demonstrating prosecutorial misconduct on appeal. He or she must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718-19, 940 P.2d 1239 (1997). To

6

demonstrate prejudice one must show that there is a substantial likelihood the prosecutorial misconduct affected the jury's verdict. *State v. Ish*, 170 Wn.2d 189, 200, 241 P.3d 389 (2010).

Where, as here, a defendant fails to object in the trial court to a prosecutor's statements, he waives his right to raise a challenge on appeal unless the remark was so flagrant and ill intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Stenson*, 132 Wn.2d at 719. Under this stringent standard of review the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Mr. Swinford argues that in the context of a criminal case there is no "duty of care." Rather, a duty of care is relevant in the context of a civil claim for negligence, where the existence of a duty owed and a breach of that duty are elements of the cause of action. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). He contends that in suggesting to the jury that Mr. Swinford owed a "duty of care"—which is not an element to be proved in a criminal trial—the prosecutor misstated the law.

7

The proper standard for a jury to find Mr. Swinford not guilty by reason of self-

defense was set forth in the court's jury instructions, which provided in relevant part:

> Homicide is justifiable when committed in the lawful defense of the
> slayer or any person in the slayer's presence or company when:
> 1. the slayer reasonably believed that the person slain intended to
>    inflict death or great personal injury;
> 2. the slayer reasonably believed that there was imminent danger of
>    such harm being accomplished; and
> 3. the slayer employed such force and means as a reasonably prudent
>    person would use under the same or similar conditions as they
>    reasonably appeared to the slayer, taking into consideration all the
>    facts and circumstances as they appeared to him at the time of and
>    prior to the incident.

Clerk's Papers (CP) at 27.

A prosecutor's argument must be confined to the law stated in the trial court's

instructions. *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972). A prosecutor's

misstatement of the law can be a serious irregularity having the grave potential to mislead

the jury. *See State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984) (in which a

prosecutor, in rebuttal, argued that a defendant could be found guilty as an accomplice,

where accomplice liability was not before the jury). A prosecutor's remarks during

closing argument are reviewed in the context of the total argument, the issues in the case,

the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150

Wn.2d 559, 578, 79 P.3d 432 (2003).

The prosecutor's reference to a duty of care strayed from the language of the legal

elements and the jury instructions. Nonetheless, the prosecutor was clearly entitled to

argue that Mr. Swinford could not claim self-defense if he did not *reasonably* apprehend felonious intent and imminent danger and did not use force and means that were *reasonable* under the circumstances. The jury was required, then, to determine whether Mr. Swinford's conduct was "reasonable." To say that the defendant must have acted reasonably is to ascribe some duty of care.

The Washington Supreme Court stated in *State v. Griffith*, 91 Wn.2d 572, 575, 589 P.2d 799 (1979) that the defense of excusable homicide was unavailable to a defendant who, "even if he could be said to have been acting lawfully, failed to exercise ordinary caution in the discharge of a firearm." Relying on *Griffith*, the State's proposed jury instructions in the trial below included a proposed instruction that "[t]he exercise of ordinary caution is essential to a claim of excusable homicide." CP at 106. The trial court questioned the need to give the instruction, asking the prosecutor, "[W]hy . . . is that not really covered under the pattern instruction which requires the slayer to reasonably believe and to use such force and means as a reasonably prudent person would use[?]" RP at 585. The prosecutor agreed that it was. It withdrew its proposed instruction based on *Griffith*.

While straying from the verbiage of the instructions, then, the prosecutor evidently believed, and the trial court had agreed, that a duty of ordinary care was implicit in Mr. Swinford's obligation to act reasonably. Mr. Swinford fails to explain why that was wrong, or at least misleading as argued to the jury. Even if there is a problem that Mr.

9

Swinford fails to explain to us, the argument cannot be said to have been inherently flagrant and ill intentioned or as causing incurable prejudice. Contrary to Mr. Swinford's assertion that a reference to a duty of care improperly shifted the burden of proof, the prosecutor was clear that the State bore the burden of proof, telling the jury that "[t]he State has the burden to prove it wasn't justifiable." RP at 599. At worst (and again, Mr. Swinford fails to demonstrate impropriety), the prosecutor characterized the State's burden as proving that Mr. Swinford failed to "satisfy a duty of care" rather than proving that he failed to act "reasonably."

Finally, the trial court's instructions to the jury set forth the standard of conduct required for self-defense and the jury was instructed to "[d]isregard any remark, statement or argument that is not supported by the . . . law as stated by the court." CP at 45. We presume that the jury follows the court's instructions. *Stenson*, 132 Wn.2d at 729-30.

It is questionable whether the prosecutor's statements were improper and Mr. Swinford fails to demonstrate prejudice. It is clear that the statements were not ill intentioned and that any conceivable prejudice could have been addressed by a curative instruction. Because Mr. Swinford fails to demonstrate misconduct requiring a new trial, the trial court did not err in refusing to order one.

## II. Community Custody Condition

Mr. Swinford next argues that the trial court exceeded its statutory authority by

10

ordering him to "undergo an evaluation for treatment for . . . substance abuse" as a condition for community custody when no finding was entered by the court to support this requirement. CP at 111. A trial court lacks the authority to impose a community custody condition unless authorized by the legislature. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). An unlawful sentence may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

RCW 9.94A.607(1) provides that "[w]here the court finds that the offender has a chemical dependency that has contributed to his or her offense" it may order the offender to "participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which the offender has been convicted and reasonably necessary or beneficial to the offender and the community in rehabilitating the offender." "If the court fails to make the required finding, it lacks statutory authority to impose the condition." *State v. Warnock*, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013).

The parties disagree as to the proper remedy for the court's failure to enter the required finding. Mr. Swinford asks that we order the trial court to strike the condition. The State asks that we remand for the court to either make the required finding or strike the condition, pointing out that the court commented during sentencing that alcohol contributed to the offense, even though it then failed to make the required finding. Under these circumstances, the appropriate remedy is to remand with the direction that the

11

evaluation and treatment condition be stricken unless the court determines that it can presently and lawfully comply with the statutory requirement for a finding that Mr. Swinford has a chemical dependency that contributed to his offense. *See State v. Jones*, 118 Wn. App. 199, 212 n.33, 76 P.3d 258 (2003).

### III. Right to Public Trial

Finally, Mr. Swinford contends that the court violated his Washington Constitution article I, section 22 public trial rights by having the parties exercise their peremptory challenges privately. Specifically, following voir dire the court announced that the parties would exercise their peremptory challenges on a jury selection document that would be passed back and forth between the lawyers. No objection was made to the procedure. The report of proceedings includes a record of which jurors were challenged by each party but that information was not announced contemporaneously in open court.

At the end of the challenge process, the jurors who were excused by peremptory challenges were asked to leave the jury box and were replaced by other jurors. The trial court then asked the parties' lawyers if the jury as constituted conformed with their records and both answered that it did.

Whether or not a particular portion of a proceeding is required to be held in public is determined by use of the "experience and logic" test. *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012). This court applied the "experience and logic" test to the exercise of peremptory challenges in *Love*, 176 Wn. App. at 920, a decision published

12

after Mr. Swinford's briefing of this issue, and concluded that "[n]either prong of the experience and logic test suggests that the exercise of . . . peremptory challenges must take place in public." The procedure for exercising peremptory challenges in *Love* was identical in all material respects to the procedure followed here. For the reasons explained in *Love*, the exercise of peremptory challenges is not required to take place in public. Mr. Swinford's right to a public trial was not violated.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Swinford raises four. We address them in turn.

*Prosecutorial Misconduct.* Mr. Swinford raises several instances of alleged prosecutorial misconduct apart from the prosecutor's references to a duty of care. He claims the prosecutor made several statements during closing argument that were not supported by the evidence. He points, first, to the prosecutor's having characterized Mr. Raney as *asking*, "'[W]hy do you have to be a badass[?]'" which the prosecutor suggested were not fighting words, allegedly "diminish[ing] the threat Mr. Swinford faced." SAG at 13. He complains, second, of the prosecutor's argument that Mr. Flick saw Mr. Swinford pick up the .45 with which he shot Mr. Raney; third, that the prosecutor argued that Mr. Raney's hands were up prior to being shot by Mr. Swinford; fourth, that the prosecutor argued that Mr. Flick could have heard Mr. Swinford "[r]acking a round" as opposed to what Mr. Flick had described as a "cocking" noise,

SAG at 14; and fifth, that the prosecutor argued that Mr. Swinford only called 911 because Mr. Flick was dialing 911 himself. He also complains that it was misconduct for the prosecutor to argue, "'[T]his is a case where a person (Mr. Swinford) shoots first and asks for you to excuse him later.'" SAG at 20. While Mr. Swinford objected in the trial court to two of these matters—the prosecutor's argument that Mr. Flick saw Mr. Swinford pick up the .45 and his argument that Mr. Raney's hands were up when he was shot—those objections were overruled by the court, which characterized the prosecutor's statements as argument.

It is prosecutorial misconduct for the State to refer to evidence outside the record. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Here, however, Mr. Swinford is complaining of the prosecutor's characterization of testimony the jury had heard. Where there is conflicting evidence, lawyers for the State and the defense can be expected to legitimately disagree over which evidence should be given the greatest weight by the jury and the inferences that may reasonably be drawn from the evidence. In closing argument, the prosecutor has wide latitude in making arguments to the jury and drawing reasonable inferences from admitted evidence. *State v. Anderson*, 153 Wn. App. 417, 427-28, 220 P.3d 1273 (2009).

The Washington pattern instructions recognize that the lawyers cannot reasonably be expected to have a perfect recollection of all of the evidence presented at trial. The introductory instruction given by the trial court at the conclusion of trial contemplated the

possibility of mistakes being made during argument, advising the jury that

> [t]he attorneys' remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence. Disregard any remark, statement or argument that is not supported by the evidence or the law as stated by the court.

CP at 45 (based on 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 1.02, at 14 (3d ed. 2008) (WPIC)).

Where the jury is given this cautionary instruction and the prosecutor does not misstate or exceed the evidence in any significant respect, his or her comments will fall within the latitude permitted counsel in closing argument. *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977); *and see State v. Gregory*, 158 Wn.2d 759, 843-44 & n.40, 147 P.3d 1201 (2006) (prosecutor misstated probabilities of one DNA (deoxyribonucleic acid) test as 1 in 325 million rather than 1 in 235 million and another as 1 in 180 billion rather than 1 in 190 billion; no prejudice from this or from unsupported representations as to the population of the United States and the world). Here again, the jury is presumed to follow the trial court's instructions. *Stenson*, 132 Wn.2d at 729-30 (jury is presumed to abide by instruction that counsel's arguments are not evidence); *and see United States v. Mares*, 940 F.2d 455, 461 (9th Cir. 1991) (holding that jury instruction cautioning jurors that closing arguments are not evidence mitigates prejudice from mistakes made in closing argument).

Here, the prosecutor's argument that Mr. Flick saw Mr. Swinford pick up the .45

15

was unsupported by Mr. Flick's testimony. There was no other evidence that would support this statement as to what Mr. Flick saw. But Mr. Swinford's lawyer promptly objected that Mr. Flick never testified to seeing Mr. Swinford *pick up* the .45, drawing an immediate correction from the prosecutor, who stated, "Whether he saw him do it, he sees him with the gun." RP at 595. Mr. Swinford's lawyer reminded the jury during his own closing argument that the prosecutor was mistaken on this point.[2]

All of the other statements challenged by Mr. Swinford's SAG were permissible inferences from the evidence and argument. Here, too, Mr. Swinford's lawyer responded to them in his own closing argument.[3]

---

[2] He reminded the jury that "Mr. Flick . . . said, well, you know, I'm going to look down at my beer. He didn't see what happened." RP at 604. Being corrected in this manner on testimony that jurors likely listened to attentively (Mr. Flick was a key witness) reflects on the prosecutor's credibility with the jury. It is a strong disincentive for any prosecutor to misstate evidence the jury has seen.

Mr. Swinford's lawyer also reminded the jurors that they were the judges of the evidence, stating, "You people all heard the testimony when it came down to the facts. And you guys are ultimately the ones that get to evaluate the evidence, and I'm grateful for that." RP at 603.

[3] He told the jury, "I know counsel here said that [Mr. Swinford] racked a round. There's absolutely no evidence of that whatsoever, none presented in any testimony"; "Dr. [Gina] Fino testified that she couldn't tell whether Mr. Raney was armed prior to this shooting. She actually couldn't say whether his arm was up or down. That's what she testified to, not that his arm was up here, which wouldn't make any sense"; "Now, the State also wants you to believe some of what Mr. Flick said but not all of it, which I find interesting. Mr. Flick testified at one point that he saw Mr. Raney's hands up, but Mr. Flick wasn't looking when the shooting started. He wasn't looking right prior to the shooting. He testified to that. He looked down at his beer for three or four seconds because he said Paul was arguing and he said, here we go. . . . Mr. Swinford also told the police less than a week later that he didn't see Mr. Raney's hands up. But now the State

As earlier discussed, a defendant complaining of prosecutorial misconduct in closing argument bears the burden of showing that the prosecutor's conduct was both improper and prejudicial. Because he shows no prejudice, we need not address further whether the prosecutor's one factual misstatement amounted to improper argument.

*Ineffective Assistance of Counsel.* With respect to the prosecutor's alleged misstatements of evidence to which Mr. Swinford's lawyer did *not* object, Mr. Swinford argues that by failing to object, his lawyer provided ineffective assistance of counsel. Mr. Flick's lawyer objected to the only misstatement of Mr. Flick's testimony by the prosecutor, so there was no deficient representation.

*Failure to Define "Great Personal Injury."* Mr. Swinford next argues that the trial court erred when it failed to define "great personal injury" within the jury instructions. He points out that it was defined for the jury in his first trial, which resulted in a mistrial. The jury in the first trial was given the pattern instruction defining the term, which states:

> "Great personal injury" means an injury that the slayer reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering if it were inflicted upon either the slayer or another person.

CP at 30 (Instruction 18, based on WPIC § 2.04.01, at 30). He is correct in pointing out

---

wants you to believe that Mr. Raney's hands were up and he puts them in different positions"; and, "Now, counsel wants you to believe that [Mr. Raney's hands] were up, but that's not a fact. There was nothing conclusive to say where his hands were." RP at 605, 609.

17

that this definition was not included in the court's instructions to the jury in the trial below.

Mr. Swinford raises this objection for the first time on appeal. "RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Guzman Nuñez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). "As pointed out in *Scott*, the general rule has specific applicability with respect to claimed errors in jury instructions in criminal cases through CrR 6.15(c), requiring that timely and well stated objections be made to instructions given or refused 'in order that the trial court may have the opportunity to correct any error.'" *Id.* (internal quotation marks omitted) (quoting *Scott*, 110 Wn.2d at 686). Mr. Swinford fails to demonstrate any basis for an exception.

*Ineffective Assistance of Counsel.* Alternatively, Mr. Swinford couches his complaint about the failure to define "great bodily injury" for the jury as one for ineffective assistance of counsel, since his lawyer failed to request an instruction defining the term and failed to take exception to the court's instructions excluding a definition.

Even if Mr. Swinford could demonstrate deficient performance, he cannot show how the deficient performance prejudiced him. The only evidence offered to support Mr. Swinford's belief that Mr. Raney intended to inflict death or great personal injury was Mr. Swinford's own testimony that Mr. Raney was wrapping his hand around a loaded

handgun and preparing to shoot. Mr. Swinford offers no explanation how the jury—if it believed him—could have misconstrued "great personal injury" to have a meaning that did not include being shot at close range by a handgun.

The pattern instruction defining "great personal injury" also contains a subjective element that the comments to the Washington pattern instructions point out is important to include when instructions on self-defense are given "in a case involving the use of force against an *unarmed assailant.*" WPIC § 16.02, at 237-38 (emphasis added) (citing *State v. Walden*, 131 Wn.2d 469, 932 P.2d 1237 (1997)). The comments comport with our conclusion that where the victim threatening harm is *armed*, any reasonable jury would conclude that a risk of great bodily injury exists. Here, the subjective element was adequately addressed by another of the court's instructions, which advised the jury:

> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for a homicide to be justifiable.

CP at 63.

Even if Mr. Swinford could demonstrate deficient performance, he cannot show how the deficient performance prejudiced him.

*Sufficiency Challenge.* Mr. Swinford next argues that the State failed to prove the absence of self-defense beyond a reasonable doubt. When the defendant raises the issue of self-defense, the absence of self-defense becomes an element of the offense that due

19

process requires the State to prove. *State v. L.B.*, 132 Wn. App. 948, 952, 135 P.3d 508 (2006).

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A defendant challenging the sufficiency of the evidence in a criminal case admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

The evidence presented at trial included the testimony of the only independent eyewitness, Mr. Flick, that Mr. Raney was not acting angry in the moment before the shooting, but was "just talking." RP at 281. It included Mr. Swinford's testimony that he looked away, did not see Mr. Raney raise the gun, and instead shot him while continuing to look away, holding his own gun with both hands. He admitted that he and Mr. Raney were engaged in normal, friendly bickering moments before the shooting and that bickering was not unusual. He admitted he overreacted. There was evidence that he took time to cock the .45 and Mr. Flick testified that Mr. Swinford mumbled something before he emptied his gun at Mr. Raney.

As to Mr. Raney, there was evidence that his hands were up against his torso in a defensive position as he was shot and that he had nothing in his hands. There was forensic evidence that he was leaning to the right and could not have been reaching for a

20

gun. An expert testified that he found no blood on the trigger or barrel portions on the gun within the armchair. Instead, he found blood only on the back portion or the area around the rear sights and around the hammer and firing pin areas, which was consistent with the gun having been tucked into the chair between the seat cushion and the inside of the arm of the chair during an event that created blood spatter.

The State presented substantial evidence supporting the absence of self-defense.

*Violation of Right to Jury Trial.* Mr. Swinford finally contends that he was denied his constitutional right to a jury trial because the jury instructions misled the jury regarding its power to acquit. We, like both other divisions of the Court of Appeals, have rejected this precise argument. *State v. Wilson,* 176 Wn. App. 147, 151, 307 P.3d 823 (2013), *review denied,* 179 Wn.2d 1012 (2014); *State v. Meggyesy,* 90 Wn. App. 693, 958 P.2d 319 (1998), *abrogated on other grounds by State v. Recuenco,* 154 Wn.2d 156, 110 P.3d 188 (2005), *rev'd,* 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); *State v. Brown,* 130 Wn. App. 767, 124 P.3d 663 (2005); *State v. Bonisisio,* 92 Wn. App. 783, 794, 964 P.2d 1222 (1998). The instruction was proper.

We affirm the conviction but remand to the trial court for the limited purpose of striking the evaluation and treatment condition unless it determines that it can presently and lawfully comply with the statutory requirement for a finding that Mr. Swinford has a chemical dependency that contributed to his offense.

A majority of the panel has determined that this opinion will not be printed in the

No. 30764-6-III
*State v. Swinford*

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

22