[No. 21988-3-II. Division Two. October 16, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL M. BONISISIO, *Appellant*.

*Roger A. Hunko* of *Law Office of Wecker Hunko*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

SEINFELD, J. — Michael Bonisisio appeals his convictions for multiple counts of burglary and of unlawful possession of firearms, and one count of trafficking in stolen goods. He alleges, among other claims, that prosecutorial vindictiveness denied him due process. The State cross-appeals an exceptional sentence below the standard range. Because Bonisisio failed to produce evidence showing that similarly situated defendants were treated differently, the trial court did not err in denying a hearing on the prosecutorial vindictiveness claim. But as Bonisisio concedes, the trial court relied upon a legally insufficient reason to support the exceptional sentence. Thus, we affirm the convictions but remand for resentencing.

## Facts

This case involves five separate burglaries; the victims were (1) Hysong, (2) Allen, (3) Hern, (4) Parker, and (5) Shelby.

Bonisisio first came to the State's attention in connection with the Hysong burglary. Two days after a burglar stole a safe containing savings bonds from the Hysong residence, Bonisisio brought the stolen bonds to a bank, saying he had found them in a park beside the door to a safe.

Bonisisio told police detectives investigating the burglary that when he found the bonds they were wet and some had

disintegrated. But the bonds showed no signs of being subjected to the weather. And the detectives could find no evidence of debris or a safe at the site where Bonisisio claimed he found the bonds. Further, Bonisisio indicated he knew the general area where the Hysongs lived, but became somewhat evasive when the detectives took him for a drive "to see if we can find [the Hysong residence]."

The State charged Bonisisio with one count of residential burglary for the Hysong incident and plea negotiations ensued. Although the State suspected Bonisisio of also being involved with the Allen, Hern, Parker, and Shelby burglaries, it agreed not to charge him with those crimes if he would agree to plead guilty to one count of residential burglary and to pay restitution to the victims of all five burglaries.

When Bonisisio rejected the proposed agreement, the State presented him with an amended information charging him with ten additional counts: four counts of first degree burglary;[1] four counts of first degree unlawful possession of a firearm; one count of first degree trafficking in stolen property; and one count of first degree possession of stolen property.[2] Upon receiving the amended information, Bonisisio filed a motion for order barring prosecution from amending the information for prosecutorial vindictiveness. In the motion, Bonisisio requested an evidentiary hearing to examine the motives of the State in filing the amended information.

At a preliminary hearing on Bonisisio's motion, the State objected to the trial court's consideration of the plea negotiation offers, arguing that ER 410 barred such information as privileged and not relevant to the proceedings. Without addressing that objection, the trial court ruled on the motion, applying the same standard as we use to consider selective prosecution allegations. Consequently, it

---

[1] Each of the first degree burglary counts involved theft of a firearm; thus, the State added a firearm enhancement to each charge, RCW 9.94A.125.

[2] The trial court later dismissed the single count of possession of stolen property.

required a prima facie showing of vindictiveness sufficient to overcome the presumption that the State had filed the additional charges for a proper reason. Concluding that Bonisisio had failed to make the necessary showing, the trial court denied the motion.

Bonisisio then requested a five-day continuance to interview a witness for the State and two other unidentified witnesses. The State opposed the continuance, arguing that it was unnecessary because the State would make its witness available to the defense. The State also argued prejudice, contending that it would lose another of its witnesses if the court granted the continuance. The trial court denied the continuance with the proviso that the State make the sought-after witness available for an interview— that same day if possible.

At trial, Bonisisio objected to all ten of the trial court's "to convict" instructions, which advised the jury that it had a "duty to return a verdict of guilty" upon finding proof beyond a reasonable doubt of each element of the charge. He proposed an alternative instruction advising the jury that it "may" return a verdict of guilty upon finding proof beyond a reasonable doubt. The court rejected Bonisisio's proposal and gave its original instruction. The jury convicted Bonisisio on all ten remaining counts.[3]

At sentencing, the court calculated the minimum standard range sentence at 252 months by adding four 60-month consecutive firearm enhancements to the 12 months of concurrent time for all the substantive convictions. The trial court concluded that RCW 9.94A.310(3)(e) made it mandatory that each firearm enhancement run consecutively to the respective underlying first degree burglary charge and to each of the other firearm enhancements as well.[4] After noting "that the multiple offense policy results in an excessive sentence," and that the resulting sentence

---

[3]Subsequently, the trial court vacated the verdict on one count of first degree unlawful possession of a firearm.

[4]RCW 9.94A.310(3)(e) states: "Notwithstanding any other provision of law, any and all firearm enhancements under this section are mandatory, shall be

was not consistent with the intent of Initiative 159,[5] the trial court imposed an exceptional sentence below the standard ranges.

Bonisisio appeals, arguing trial court error (1) in denying an evidentiary hearing on his claim of prosecutorial vindictiveness; (2) in denying a continuance; and (3) in instructing the jury. He also claims insufficient evidence and ineffective assistance of counsel.

The State cross-appeals, arguing that the trial court erred in (1) finding the sentence excessive and contrary to the intent of Initiative 159; (2) basing its exceptional sentence on the multiple offender policy of the Sentencing Reform Act of 1981; and (3) considering plea negotiations during its hearing on the defense motion.

## I. PROSECUTORIAL VINDICTIVENESS

Bonisisio claims that the trial court abused its discretion by not granting an evidentiary hearing on his claim of prosecutorial vindictiveness. *State v. Michielli*, 132 Wn.2d 229, 937 P.2d 587 (1997).

■■ " 'Prosecutorial vindictiveness is [the] intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a procedural right.' " *State v. Lee*, 69 Wn. App. 31, 35, 847 P.2d 25 (1993) (quoting *State v. McKenzie*, 31 Wn. App. 450, 452, 642 P.2d 760 (1981)). But an initial charging decision does not freeze prosecutorial discretion. *Lee*, 69 Wn. App. at 37. A prosecutor may increase an initial charge when a fully informed and represented defendant refuses to plead guilty to a lesser charge. *Id.* at 36; *United States v. Goodwin*, 457 U.S. 368, 378-80, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). Nonetheless, "a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was

served in total confinement, and shall not run concurrently with any other sentencing provisions."

[5] Initiative 159 is known as the Hard Time for Armed Crime Act. RCW 9.94A.310.

motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 384.

In federal courts, the treatment of a vindictiveness claim varies depending upon whether the defendant raises the claim pretrial, or upon appeal or retrial. *See, e.g., id.* at 368. Although there is a presumption of vindictiveness when a prosecutor files an indictment in response to a defendant's filing of an appeal, there is no such presumption in a pretrial setting. *Id.* at 375-76.

A defendant in a pretrial setting bears the burden of proving either " '(1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness.' " *United States v. Wall,* 37 F.3d 1443, 1447 (10th Cir. 1994) (quoting *United States v. Wood,* 36 F.3d 945, 946 (10th Cir. 1994)). Once the defendant makes the required showing, the prosecution must " 'justify its decision with legitimate, articulable, objective reasons' " for its actions. *Wall,* 37 F.3d at 1447 (quoting *United States v. Raymer,* 941 F.2d 1031, 1040 (10th Cir. 1991)).

The case law does not specify when a trial court must grant a request for an evidentiary hearing to examine a claim of prosecutorial vindictiveness. We conclude, however, that it is reasonable to apply the same analysis as is used for selective prosecution claims. That is what the trial court did and, in oral argument before this court, defense counsel conceded that prosecutorial vindictiveness is a subcategory of selective prosecution.

A defendant seeking discovery on a claim of selective prosecution must produce some evidence that the government could have prosecuted similarly situated defendants but chose not to do so. *United States v. Armstrong,* 517 U.S. 456, 469, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). The evidence must tend to show the existence of the elements of the claim. *Id.* at 469.

The only evidence that Bonisisio presented suggesting prosecutorial vindictiveness was defense counsel's asser-

tion that in approximately 18 years of practice in Kitsap County he had "never had charges this severe brought against any individual charged with crimes where no one was physically harmed." Conspicuously absent was any evidence regarding Kitsap County's treatment of similarly situated defendants. There was not a single description of a specific incident where Kitsap County failed to charge a defendant suspected of multiple burglaries after the defendant rejected a plea bargain. Nor was there data indicating that the Kitsap County prosecutor's office deviated from its normal practice and procedures in pursuit of Bonisisio.[6] Given the absence of evidence supporting the prosecutorial vindictiveness claim, the trial court did not err in denying Bonisisio an evidentiary hearing.

## II. EVIDENCE OF PLEA NEGOTIATIONS

On cross-appeal, the State argues that the trial court erred in considering evidence of plea negotiations during its hearing on the defense motion. The State argues that the general prohibition against admitting evidence of plea negotiations should be extended to the situation here where the defendant claims prosecutorial vindictiveness after plea negotiations break down. ER 408, 410; *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978). We do not address this assignment of error because the State prevailed on the motion, thus rendering the issue moot. *In re Marriage of T.*, 68 Wn. App. 329, 336, 842 P.2d 1010 (1993).

## III. DENIAL OF CONTINUANCE

Bonisisio also appeals the trial court's denial of his motion for a continuance, which we review under an abuse of discretion standard, considering such factors as whether the purpose of the motion was to delay the proceedings, and whether the court had granted prior continuances. *In re Custody of R.*, 88 Wn. App. 746, 758, 947 P.2d 745 (1997);

---

[6]We also note that the amended information charged Bonisisio with burglaries at four additional residences; it did not merely increase the charges for the same alleged criminal conduct. *See Lee*, 69 Wn. App. at 35.

*State v. Honton*, 85 Wn. App. 415, 423, 932 P.2d 1276, *review denied*, 113 W.2d 1011 (1997). The trial court does not abuse its discretion in denying a motion for a continuance if (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence additional discovery might establish; or (3) the desired evidence will not raise a genuine issue of material fact. *Molsness v. City of Walla Walla*, 84 Wn. App. 393, 400-01, 928 P.2d 1108 (1996).

Here, although Bonisisio did not receive the amended information until approximately one week before trial, he did not claim that the charging document was untimely or otherwise prejudicial. Nor did he seek to sever any of the charges or explain what information he sought to obtain through the additional discovery. Further, he had been aware of the possibility of the State filing those charges for a considerable time.

In an effort to minimize prejudice to Bonisisio, the trial court required the State to produce the desired witness and, as defense counsel conceded in oral argument, counsel did in fact interview the witness before trial. The trial court found that a further delay would prejudice the State, causing it to lose another of its witnesses. In light of these considerations, the trial court acted with reasonable discretion in denying the continuance.

## IV. JURY INSTRUCTION

Bonisisio claims that the trial court's "to convict" instructions, which advised the jury that it had a "duty" to convict upon a finding of proof beyond a reasonable doubt, violated his right to a jury trial and to due process. He argues that the court should have told the jury that it "may" convict upon a finding of proof beyond a reasonable doubt. U.S. CONST. amend. VII, WASHINGTON CONST. art. I, § 21 and *Leonard v. Territory*, 2 Wash. Terr. 381, 399, 7 P. 872 (1885).

Division One of the Court of Appeals recently upheld a similar instruction, reasoning that the instruction did not

invade the province of the jury. *State v. Meggyesy*, 90 Wn. App. 693, 699, 958 P.2d 319 (1998). The *Meggyesy* court held that the instruction did not implicate the federal constitutional right to trial by jury or misstate the law, 90 Wn. App. at 701, and that neither the state nor federal constitutions prohibited the instruction, 90 Wn. App. at 703-04 (applying the six-step analysis set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986)).

As here, the defendants in *Meggyesy* argued for an instruction telling the jury it "may" convict. 90 Wn. App. at 697. We agree with the reasoning in *Meggyesy* that such an instruction is equivalent to notifying the jury of its power to acquit against the evidence and that a defendant is not entitled to a jury nullification instruction. 90 Wn. App. at 700. We also agree with the *Meggyesy* court that *Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416 (1967), is inapposite because the Indiana Constitution, in contrast to the Washington Constitution, requires the jury to determine the law. *Meggyesy*, 90 Wn. App. at 704. Thus, the trial court did not err in instructing the jury as it did.

## V. SUFFICIENCY OF THE EVIDENCE

 Bonisisio claims that the evidence was insufficient to support the convictions. A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that the trier of fact could draw from the evidence. *State v. Miller*, 91 Wn. App. 869, 872, 960 P.2d 464 (1998). Evidence is sufficient if after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Miller*, 91 Wn. App. at 872. Circumstantial and direct evidence are equally reliable. *State v. Ong*, 88 Wn. App. 572, 576, 945 P.2d 749 (1997). The reviewing court defers to the trier of fact on the credibility of witnesses and the persuasiveness of evidence. *Ong*, 88 Wn. App. at 576.

The evidence here was sufficient to support the convic-

tions. The burglar kicked in doors at the Allen, Hern, Hysong, and Parker residences, and Bonisisio had boasted to others that he had knocked down doors and took things from houses.

Firearms were stolen from the Allen, Hern, Parker, and Shelby residences and Bonisisio was seen brandishing firearms, including a shotgun he claimed to have obtained from a house. Bonisisio also was linked to items stolen from the Allen, Hern, Hysong, and Parker residences.

Although Bonisisio raises questions as to the evidence linking him to the Shelby burglary, there was evidence that he acted as a lookout. Bonisisio lived next door to the Shelbys, and a witness saw him standing in his driveway next to the Shelby residence at the approximate time of the burglary. Footprints led from the Shelby residence to the Bonisisio residence. The burglar stole a shotgun, and Bonisisio was seen handling such a weapon and claimed that he obtained it from a house. This evidence, along with reasonable inferences, viewed in a light most favorable to the State, was sufficient to support Bonisisio's convictions for the five burglaries.

## VI. EXCEPTIONAL SENTENCE

The Sentencing Reform Act of 1981 (SRA) authorizes a court to impose a sentence outside the standard range if "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2); *State v. Bourne*, 90 Wn. App. 963, 974, 954 P.2d 366 (1998). The SRA provides a list of aggravating and mitigating circumstances that a court may consider in imposing an exceptional sentence. RCW 9.94A.390; *Bourne*, 90 Wn. App at 974. These circumstances "are illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A.390; *Bourne*, 90 Wn. App. at 974.

The trial court here concluded that a clear reading of RCW 9.94A.310(3)(e) requires that the firearm enhancements run consecutively to both the underlying crimes and

to each other. Citing the impact of the consecutive enhancements and the multiple offender policy, RCW 9.94A.400, the trial court imposed an exceptional sentence below the standard range.

In its cross-appeal, the State urges us to reverse the exceptional sentence, contending that the trial court erred in relying upon the multiple offender policy to support the sentence. At oral argument before this court, counsel for Bonisisio agreed that the exceptional sentence must be reversed. Although Bonisisio's counsel did not agree with the State's argument, he argued that a recent Supreme Court decision interpreting RCW 9.94A.310(3)(e) as allowing trial court discretion to impose concurrent enhancement sentences supported a remand for resentencing. *See In re Charles*, 135 Wn.2d 239, 254, 955 P.2d 798 (1998).

The State argues that the issue of consecutive firearm enhancements is not properly before this court because neither party assigned error to the trial court's interpretation of RCW 9.94A.310(3)(e). Although we generally review a claimed error only if it is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto, RAP 10.3, we also are to interpret the RAPs liberally to promote justice and facilitate a decision on the merits. RAP 1.2(a). Moreover, an appellate court has inherent authority to consider an issue not raised by either party if necessary to resolve the case. *Alverado v. Washington Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988); RAP 12.1(b).

Here, the State seeks review of the exceptional sentence but asks us to ignore the fact that the firearm enhancement was central to the trial court's decision to impose an exceptional sentence. Because it is not possible to review the sentence fairly without looking at the basis for the trial court's actions, we have determined that it is necessary to consider the significance of the *Charles* decision on this case.

As the *Charles* court explains, weapon enhancements must always run consecutively to the underlying convictions, but:

[I]f the court runs the enhancements consecutively with the base sentences and then consecutively with each other, it is as if the court had taken the enhancement for one crime and stacked it on top of the enhancement which has been added to a different offense. This runs counter to the normal structure of the SRA.

135 Wn.2d at 254. Instead, the trial court has the discretion, considering the guidelines in RCW 9.94A.400, to run multiple enhancements either consecutively or concurrently. *Charles*, 135 Wn.2d at 254.

■ *Charles* undermines one of the trial court's primary reasons for imposing an exceptional sentence—to provide for a sentence more in keeping with the goals of Initiative 159. It appears quite likely that the trial court would have imposed a sentence within the standard range had it correctly interpreted the statute to allow concurrent enhancements. Because the trial court's reliance on a misinterpretation of RCW 9.94A.310(3)(e), both to calculate the standard range and to support the exceptional sentence, was erroneous, we remand for resentencing. At resentencing, the trial court may, to the extent the law allows, exercise its discretion to impose the sentence it determines appropriate.

Because the misinterpretation of the enhancement statute necessitates a reversal and remand, we find it unnecessary to consider the State's argument that the trial court improperly relied on the multiple offense policy in imposing the exceptional sentence.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Bonisisio claims in his pro se supplemental brief that defense counsel's misstatement at the end of closing argument—counsel mistakenly said "convict" and then immediately corrected himself—constituted ineffective assistance of counsel.

To demonstrate ineffective assistance of counsel, a defend-

ant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

We refer to the entire record below to determine competency of counsel; there is a strong presumption that counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. Here, the record reflects a vigorous and competent defense. Defense counsel's slip of the tongue came at the end of an extensive closing argument and counsel immediately corrected himself and went on to assert that the State had failed to prove the case beyond a reasonable doubt. Viewed in light of the entire record, defense counsel's performance did not fall below an objective standard of reasonableness. *Id.* at 334. And because Bonisisio failed to show deficient performance, we do not address the prejudice prong of the test. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996); *State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986).

We affirm the convictions, reverse the exceptional sentence and mandatory enhancements, and remand for resentencing.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 137 Wn.2d 1024 (1999).