124 P.3d 663 (2005)
130 Wash.App. 767
STATE of Washington, Respondent,
v.
Christopher Lee BROWN, Appellant.
No. 32338-9-II.
Court of Appeals of Washington, Division 2.
December 13, 2005.
Lauren Michele Erickson, Attorney at Law, Port Angeles, WA, for Respondent.
Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Christopher Lee Brown appeals his convictions of two counts of second degree burglary and one count of first degree trafficking in stolen property. Among other issues, he claims the prosecutor committed prejudicial misconduct by repeatedly calling him a liar during closing argument. We agree, and because there is a substantial likelihood the misconduct contributed to the jury's verdict, we reverse. In addition to the misconduct, we address only those issues likely to arise on retrial.

FACTS
¶ 2 Kim Bottoms, Christopher Brown's ex-girlfriend, told the Sequim police that she was with Brown when he burglarized two storage units. A Sequim police officer told Bottoms that if she testified truthfully about *664 the burglaries, he would recommend that the prosecutor not file charges against her for the burglaries.
¶ 3 The police found some of the stolen items at Brown's residence, other items at his brother's house, and some at the antique stores where Bottoms said Brown had sold them. Brown denied burglarizing the storage units. He explained that his mother had a unit at the storage complex and that he had taken some items from her unit to throw away. Brown said that when he arrived at the dumpster in the storage facility, he saw a number of sealed boxes and some furniture. He claimed that he thought somebody had thrown the items away, so he and his current girlfriend loaded the stuff in his van. Brown's girlfriend corroborated his story.
¶ 4 The State moved to preclude Brown's attorney from asking Bottoms about her pending forgery charge. Defense counsel argued that the evidence was admissible as ER 404(b) (bad acts) evidence. The trial court refused to allow the questioning. On appeal, Brown now reasons that the evidence should have been admitted to show Bottoms's motive to help the prosecutor with the expectation of a possible deal on the forgery charge.[1]
¶ 5 In closing argument, the prosecutor stated,
What this case is about is really common sense and credibility and I submit to you that this defendant is not credible[;] ... [t]o believe his [Brown's] story you have to believe either, the Picard's and the Hurlbut's (the victims) simply threw their stuff away one time and he came across it. Well, I don't think anybody believes that.
Report of Proceedings (RP) (July 8, 2004) at 3-4; 5-6. After reviewing Bottoms's testimony and Brown's denial of her story, the prosecutor said, "He's a liar, ladies and gentlemen, and that is what you're going to have to decide and I submit to you the right decision is that he is lying and that he did [enter units four and six, steal items, and sell the items]." RP (July 8, 2004) at 14. Finally, the prosecutor concluded, "He's a liar, you can't believe what he told you and after you go to the jury room, review the evidence, I believe the right verdict is that you should find him guilty [of the charged crimes]." RP (July 8, 2004) at 19.
¶ 6 On rebuttal, the prosecutor argued, "[The burden of proof beyond a reasonable doubt is] a good law, but in this case this man is lying and he has burgled two storage units"; RP (July 8, 2004) at 34; and again, "[M]aybe I am belaboring in spite of what I said, but I just will remind you again, [Brown] is lying." RP (July 8, 2004) at 36.

ANALYSIS

I. THE JURY'S POWER TO ACQUIT
¶ 7 Brown claims that the trial court's "to convict" instructions, which advised the jury that it had a "duty" to convict upon a finding of proof beyond a reasonable doubt, violated his right to a jury trial. Specifically, he argues that the instruction misled the jury into believing that it lacked the power to nullify. Because the issue may arise on retrial, we briefly address it.
¶ 8 Jury instructions are sufficient if they are not misleading, permit the parties to argue their cases, and properly inform the jury of the applicable law when read as a whole. State v. Kennard, 101 Wash.App. 533, 536-37, 6 P.3d 38 (2000) (citing State v. Tili, 139 Wash.2d 107, 126, 985 P.2d 365 (1999)). Brown asserts that the state constitution prohibits the challenged jury instruction language.
¶ 9 In State v. Meggyesy, Division One, addressing essentially the same arguments Brown makes here, upheld a similar instruction, holding that it violated neither the state nor federal constitution. State v. Meggyesy, 90 Wash.App. 693, 701-04, 958 P.2d 319 (1998), overruled on other grounds in State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005), cert. granted, ___ U.S. ___, 126 S.Ct. 478, 163 L.Ed.2d 362 (2005) (applying the six-step analysis set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986)).
¶ 10 We agreed with the reasoning of Meggyesy in State v. Bonisisio, 92 Wash.App. 783, 964 P.2d 1222 (1998). There, the defendant *665 also complained of a "to convict" instruction that instructed the jury it had a "duty" to return a verdict of guilty upon finding proof beyond a reasonable doubt of each element of the charge. Bonisisio, 92 Wash.App. at 793, 964 P.2d 1222. Bonisisio had proposed an instruction telling the jury that it "may" convict. Bonisisio, 92 Wash. App. at 793, 964 P.2d 1222.
¶ 11 Brown argues that Bonisisio and Meggyesy are distinguishable because in those cases each defendant asked the court to instruct the jury that it "may" convict. Here, Brown argues that the language of the "to convict" instruction affirmatively misleads the jury about its power to acquit. Brown points to the jury's power to acquit against the evidence, citing to Hartigan v. Territory of Wash., 1 Wash. Terr. 447, 449 (1874). Brown also argues that the court's use of the word "duty" in the "to convict" instructions conveyed to the jury that they could not acquit if the elements had been established. He cites to the dictionary definition of "duty" as, "[a]n act or a course of action that is required of one by ... law." Br. of Appellant at 20 (quoting AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, Fourth Edition, Houghton Mifflin (2000)). Brown claims that this is a misstatement of the law and that it deceived the jurors about their power to acquit in the face of sufficient evidence.
¶ 12 We find no meaningful difference between Brown's argument and the issues raised in Bonisisio and Meggyesy. The Meggyesy court, although addressing a slightly different argument, held that instructing the jury it had a "duty" to convict if it found the elements were proven beyond a reasonable doubt did not misstate the law. Meggyesy, 90 Wash.App. at 700-01, 958 P.2d 319. And in Bonisisio, 92 Wash.App. at 794, 964 P.2d 1222, we held that the trial court did not err in instructing the jury that it had a duty to convict if it found that the State had proven all the elements beyond a reasonable doubt. Further, the purpose of a jury instruction is to provide the jury with the applicable law to be applied in the case. State v. Borrero, 147 Wash.2d 353, 362, 58 P.3d 245 (2002). The power of jury nullification is not an applicable law to be applied in a second degree burglary case. We reject Brown's argument that the court erred in giving the "duty" instruction.
¶ 13 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, J., and VAN DEREN, A.C.J.
NOTES
[1] Because this issue may not arise on retrial, we do not address it.