FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8: 45

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44033-4-II |
| Respondent, | |
| v. | |
| LARNARD LACHELL PINSON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — A jury returned verdicts finding Larnard Pinson guilty of violation of a court order, attempted violation of a court order, and witness tampering. Pinson appeals his convictions, asserting that (1) the trial court's "to-convict" jury instructions misstated the law and violated his jury trial right by informing the jury that it had a duty to convict him if it found that the State had proved all the essential elements of its charges beyond a reasonable doubt.

Pinson also filed a statement of additional grounds (SAG) for review, in which he challenges his convictions and sentence, asserting that (2) the trial court erred by failing to suppress all the evidence used against him, (3) his convictions for attempted violation of a court order and witness tampering violated his right to be free from double jeopardy, (4) the trial court violated his CrR 3.3 timely trial right by improperly granting continuance motions, (5) the trial court imposed an improper sentence with regard to his witness tampering conviction, and (6) the prosecutor committed misconduct by eliciting irrelevant and prejudicial testimony. Additionally, Pinson's SAG asserts that his defense counsel rendered ineffective assistance by (7) failing to

file a motion to suppress evidence, (8) failing to subpoena a witness favorable to the defense, and (9) failing to object to certain hearsay testimony. We affirm.

FACTS

In July 2011, Pierce County Sheriff's Deputies Walter Robinson and Seth Huber responded to a Pierce County Transit dispatch report of two individuals drinking alcohol in a bus shelter. When they arrived, the deputies saw Pinson in the bus shelter with Cassandrea Doyle. At that time, Pinson was prohibited by court order from having contact with Doyle.

In a nearby trash container, the deputies saw beer cans that were cold and that had condensation on them. Robinson and Huber believed that Pinson and Doyle were intoxicated. After Robinson contacted Pierce County Transit and was informed that Pinson was not allowed on transit property, he arrested Pinson for criminal trespass. Robinson searched Pinson's backpack and found an open container of alcohol and two Washington State identification cards, one belonging to Pinson and the other belonging to Doyle.

The State filed an information charging Pinson with violation of a court order, alleging that Pinson had contacted and assaulted Doyle on December 24, 2011. Later, the State amended its information to charge Pinson with an additional count of violation of a court order based on his contact with Doyle at the Pierce County Transit bus shelter. The following month, the State again amended its information to charge Pinson with witness tampering and attempted violation of a court order based on a telephone call Pinson had made to his mother from the Pierce County jail.

On the first day of trial, the State informed the trial court that it would not be pursuing its charge against Pinson for the December 24, 2011 violation of a court order because it could not

No. 44033-4-II

locate Doyle, but that it would pursue its remaining charges without the victim testifying as a witness.

At trial, Deputies Robinson and Huber testified consistently with the above facts. James Scollick, the inmate telephone supervisor at the Pierce County Jail, testified about a telephone call that Pinson had made to his mother from the jail in January 2012; a recording of the telephone call was played to the jury. Pierce County Deputy Prosecutor Jennifer Sievers testified about her experience working in the special assault unit of the prosecutor's office. During Sievers's testimony, the following exchange took place:

> [State]: Okay. Now, in situations where you are handling cases where the two people involved are related to each other, have you ever had difficulty obtaining the cooperation of the victim?
> [Sievers]: Yes.
>
> . . . .
>
> [State]: In your experience, what are some of the reasons that that can happen?
> [Sievers]: Well, there is sometimes a fear of retaliation. The victim is fearful that if he or she testifies, then, you know, what might happen at home afterwards would not be pleasant.
> Maybe he or she is scared of the other party and doesn't want to face them. And there is also kind of this circle of violence where there is violence at the time, and they call the police and prosecution gets rolling, and then the victim decides that she loves the other person or he loves the other person and doesn't want to follow through with the prosecution.

Report of Proceedings (RP) (July 24, 2012) at 110-111. Defense counsel objected and the trial court excused the jury from the courtroom. Defense counsel then moved for a mistrial, arguing that Sievers was not qualified to testify as an expert witness and that her testimony improperly suggested that Doyle was absent from trial because she was suffering from battered wife syndrome. The trial court agreed that Sievers's testimony was improper, but it denied defense counsel's mistrial motion, stating:

3

So, clearly, that response is objectionable. The issue is, and hopefully I excused the jury early enough in that narrative response to be able to unring the bell. And I am going to—you know, I think I cut it off in time to, in essence, deal with it by some lesser means than a mistrial.

And I am prepared to consider a curative instruction that defense might propose.

RP (July 24, 2012) at 114. When the jury returned to the courtroom, the trial court stated:

I have an instruction to give to you on some of the responses that you just heard. Ms. Sievers was asked some general questions to which she gave some general comments regarding experiences that she may have had from other cases, and those are totally unrelated to this case, and those are not relevant in this proceeding. So those general responses to general experience, I am asking you to disregard that testimony and not to consider it in this proceeding.

RP (July 24, 2012) at 122-23.

The jury returned verdicts finding Pinson guilty of violation of a court order, attempted violation of a court order, and witness tampering. Pinson timely appeals.

## ANALYSIS

### I. TO-CONVICT JURY INSTRUCTIONS

Pinson contends that the trial court erred by providing "to-convict" jury instructions that misled the jury on its power to acquit. Specifically, Pinson argues that the trial court's jury instructions misstated the law and violated his jury trial rights by imposing on the jury a duty to convict if it found the State had proved the elements of the charged crimes beyond a reasonable doubt. We disagree.

The challenged language in each of the trial court's "to-convict" jury instructions stated:

If you find from the evidence that each of these elements[1] has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 54, 57, 61. This language is taken verbatim from 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.21, at 101 (3d ed. 2008).

We have unequivocally rejected the argument Pinson advances here. *State v. Davis*, 174 Wn. App. 623, 640-41, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013); *State v. Brown*, 130 Wn. App. 767, 770-71, 124 P.3d 663 (2005); *State v. Bonisisio*, 92 Wn. App. 783, 793-94, 964 P.2d 1222 (1998). Accordingly, Pinson's argument fails.

## II. SAG ISSUES

A.    *Suppression of Evidence*

In his SAG, Pinson first contends that the trial court should have suppressed all the evidence against him, asserting that the evidence was obtained as a result of an unlawful arrest. We disagree.

Pinson did not challenge the validity of his arrest at trial.[2] And a defendant's "failure to move to suppress evidence he contends was illegally gathered constitutes a waiver of any error associated with the admission of the evidence." *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995). Accordingly, we decline to address the validity of Pinson's arrest for the first time

---

[1] The trial court's attempted violation of a court order "to-convict" jury instruction uses the word "element" singularly. We assume this to be a typographical error.

[2] Pinson asserts in his SAG that his previous defense counsel had filed a motion to suppress evidence, but there is nothing in the record on appeal to support his assertion.

on appeal. Moreover, even if Pinson had properly preserved this issue, it is clear from the record that there was probable cause to arrest him.

Although Pinson's SAG asserts that officers unlawfully arrested him for criminal trespass, he fails to explain how the arrest was unlawful. In general, a police officer has probable cause to arrest a suspect if the officer has trustworthy information sufficient to reasonably believe that an offense has been or is being committed. *State v. Knighten*, 109 Wn.2d 896, 899, 748 P.2d 1118 (1988). Here, the officers arrested Pinson for criminal trespass only after they had (1) received a dispatch report of two individuals drinking alcohol in a Pierce County Transit bus shelter, (2) observed Pinson in the bus shelter, and (3) confirmed that Pinson was not allowed on Pierce County Transit property. This was sufficient to establish probable cause to arrest Pinson for criminal trespass. See former RCW 9A.52.080 (1979).

To the extent Pinson contends that his arrest was unlawful because the exclusion order prohibiting him from entering Pierce County Transit property had expired, there is no evidence in the record to support this contention. Accordingly, Pinson's claim that the trial court should have excluded the evidence against him because his arrest was unlawful is meritless.

B.   *Double Jeopardy*

Next, Pinson contends that his convictions for witness tampering and attempted violation of a court order violate the constitutional prohibition against double jeopardy. Again, we disagree.

Both our federal and state constitutions prohibit "'being (1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense.'" *State v. Turner*, 169 Wn.2d

448, 454, 238 P.3d 461 (2010) (quoting *State v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Pinson's double jeopardy claim implicates the third prohibition, in that he contends the trial court punished him multiple times for the same offense.

When analyzing a double jeopardy claim, we ask whether the legislature intended the charged crimes to constitute the same offense. *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). *Freeman* sets out a four-part framework for analyzing double jeopardy claims. 153 Wn.2d at 771-73. First, we look to express or implicit legislative intent to punish the crimes separately; if legislative intent is clear, we look no further. *Freeman*, 153 Wn.2d at 771-72. Second, if the legislature has not clearly stated its intent, we may apply the "same evidence" test to the charged offenses.[3] *Freeman*, 153 Wn.2d at 772. Third, we may use the merger doctrine to discern legislative intent. *Freeman*, 153 Wn.2d at 772-73. Finally, if the two offenses appear to be the same but each one has an independent purpose or effect, then the two offenses may be punished separately. *Freeman*, 153 Wn.2d at 773.

Because neither the witness tampering statute, RCW 9A.72.120, nor the violation of a court order statute, former RCW 26.50.110 (2009), has a specific provision expressly authorizing separate punishments for the same conduct, we turn to the same evidence test to determine whether Pinson's convictions violated the constitutional prohibition against double jeopardy. *See, e.g., State v. Leming*, 133 Wn. App. 875, 888, 138 P.3d 1095 (2006). Under the same

---

[3] Washington's "same evidence" test is sometimes referred to as the "same elements" test or "the *Blockburger* test." *Freeman*, 153 Wn.2d at 772 (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

evidence test, if each offense contains an element not contained in the other offense, the offenses are different for double jeopardy purposes. *State v. Jackman*, 156 Wn.2d 736, 747, 132 P.3d 136 (2006). The same evidence test requires that we determine "'whether each provision requires proof of a fact which the other does not.'" *State v. Baldwin*, 150 Wn.2d 448, 455, 78 P.3d 1005 (2003) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)).

To prove witness tampering as charged here, the State had to prove beyond a reasonable doubt that Pinson (1) attempted to induce Doyle to (2) absent herself from any official proceeding. RCW 9A.72.120(1)(b). In contrast, to prove attempted violation of a court order as charged here, the State had to prove beyond a reasonable doubt that Pinson (1) intended to commit the crime of violation of a court order and (2) took a substantial step toward the commission of the crime of violation of a court order.[4] RCW 9A.28.020; former RCW 26.50.110.

Applying the same evidence test here, we hold that Pinson's convictions for witness tampering and attempted violation of a court order did not offend the prohibition against double

---

[4] The violation of a court order statute, former RCW 26.50.110, provides in relevant part:
> (1)(a) Whenever an order is granted under . . . chapter . . . 10.99 . . . RCW . . . and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
>> (i) . . . restraint provisions prohibiting contact with a protected party.
>> . . . .
> (5) A violation of a court order issued under . . . chapter . . . 10.99 . . . RCW . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order . . . .

jeopardy because each crime required proof of a fact that the other did not. The crime of witness tampering required proof that Pinson attempted to prevent Doyle from appearing at his trial, a fact not required to prove the crime of attempted violation of a court order. Conversely, the crime of attempted violation of a court order required proof that Pinson intended to violate the provisions of court order, a fact not required to prove witness tampering. Accordingly, Pinson's double jeopardy claim fails.

C.    *CrR 3.3 Timely Trial Right*

Next, Pinson contends that the trial court's grant of multiple continuance motions violated his CrR 3.3 timely trial right. Specifically, Pinson asserts that courtroom congestion and the unavailability of a prosecutor are not valid reasons to extend the time for trial under CrR 3.3. But the record before us is not sufficient to address the merits of Pinson's contention. The only record related to the trial court's grant of a continuance motion is a brief record of a June 28, 2012 proceeding, in which the trial court stated that it was signing an order continuing the trial until July 9 because a necessary State witness was unavailable. The record on appeal does not contain the written continuance order that the trial court signed on June 28, does not contain any information related to the continuances Pinson appears to complain of in his SAG, and does not contain any information showing whether Pinson timely objected to those continuances, thereby preserving this issue for appeal. Accordingly, we decline to address the merits of Pinson's timely trial challenge on the record before us.

D.    *Sentencing*

Next, Pinson contends that the trial court erred by sentencing him to 29 months of incarceration for witness tampering because witness tampering is a gross misdemeanor offense.

This contention is meritless as RCW 9A.72.120(2) provides, "Tampering with a witness is a class C felony."

E.      *Prosecutorial Misconduct*

Next, Pinson contends that the prosecutor committed misconduct by eliciting irrelevant and prejudicial testimony from Sievers regarding her experience with victim witnesses that are uncooperative with the prosecution. Because the trial court's curative instruction remedied any prejudice resulting from Sievers's testimony, we disagree.

To establish prosecutorial misconduct, the defendant bears the burden to establish that a prosecutor's conduct was both improper and prejudicial. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice is established "where there is a substantial likelihood the improper conduct affected the jury." *Fisher*, 165 Wn.2d at 747.

Here Sievers's testimony suggested, but did not explicitly state, that Doyle was not present to testify at Pinson's trial because she was scared of Pinson and feared that he would violently retaliate against her if she testified against him. Because Sievers's testimony did not actually state that her general experience with uncooperative victim witnesses applied to Doyle and because the trial court instructed the jury to disregard Sievers's testimony about her general experiences, Pinson fails to show that the improper testimony had a substantial likelihood of affecting the jury's verdict. Accordingly, he fails to show that the prosecutor committed misconduct by eliciting the testimony.

F.      *Ineffective Assistance of Counsel*

Next, Pinson raises a number of ineffective assistance of counsel claims. To prevail on an ineffective assistance of counsel claim, Pinson must show both that (1) counsel's performance

was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). If Pinson fails to establish either prong of this test, our inquiry ends and we need not consider the other prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

1. *Failure To Move To Suppress Evidence*

Pinson first contends that his defense counsel was ineffective for failing to move to suppress evidence that was obtained as a result of his unlawful arrest. We disagree. As we addressed above, the officers here had sufficient probable cause to arrest Pinson for criminal trespass. Accordingly, Pinson has not shown that he was subjected to an unlawful arrest and, thus, he cannot demonstrate that his counsel rendered deficient performance by failing to submit a motion to suppress evidence on this ground at trial.

2. *Failure To Subpoena a Witness*

Next, Pinson contends that his defense counsel was ineffective for failing to subpoena a witness that would have provided testimony beneficial to his defense. Specifically, Pinson claims that his defense counsel was ineffective for failing to subpoena the Pierce County Transit bus driver that reported his trespass to the police. This claim fails as there is no indication in the record that the unnamed bus driver would have provided testimony beneficial to the defense. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (Appellate courts do not consider matters that are outside the trial record when reviewing an issue on direct appeal.).

No. 44033-4-II

### 3. *Failure To Object to Hearsay Evidence*

Finally, Pinson contends that his defense counsel was ineffective for failing to object to hearsay evidence. Specifically, Pinson argues that his counsel was ineffective for failing to object to Deputy Robinson's testimony that he and Huber "received a call from Transit dispatch saying there were two people drinking in a bus shelter." RP (July 24, 2012) at 46. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Here, Robinson's statement that he received a call regarding "two people drinking in a bus shelter" was not hearsay because it was not offered to prove the fact that two people were drinking in the bus shelter, but rather to explain his reasons for conducting the investigation at the bus shelter. RP (July 24, 2012) at 46; *see State v. Crowder*, 103 Wn. App. 20, 26, 11 P.3d 828 (2000) ("Statements not offered to prove the truth of the matter asserted, but rather as a basis for inferring something else, are not hearsay.").

Moreover, even if Robinson's statement contained inadmissible hearsay, Pinson cannot show any prejudice resulting from defense counsel's failure to object to it because both Robinson and Huber testified that Pinson and Doyle appeared to be intoxicated. Accordingly, even if objectionable, Robinson's testimony regarding a report of two people drinking was merely

12

No. 44033-4-II

cumulative to other non-hearsay evidence that Pinson and Doyle had been drinking alcohol at the bus shelter.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Melnick, J.

13