# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69892-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY C. LEE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |
| | ) | |

LAU, J. — Anthony Lee challenges the trial court's order denying a motion to withdraw his guilty plea to one count of criminal solicitation to deliver cocaine. He alleges his plea was involuntary because the court pressured him to accept the plea offer and never advised him that his right to appeal the suppression ruling was waived on a plea of guilty. Because Lee fails to overcome the heavy burden that his plea was voluntary and his pro se statement of additional grounds lacks merit, we affirm.

## FACTS

On March 21, 2012, Seattle Police Officer P.J. Fox and Department of Corrections (DOC) Community Corrections Officer (CCO) Lisa Tavarez were patrolling a high drug trafficking area in downtown Seattle when they observed approximately

eight to twelve people standing in line at the driver's side of a parked car. Officer Fox recognized several of the people as known drug users. Anthony Lee was sitting in the back seat of the car with the window partially rolled down. While verifying Lee's identity, Officer Fox ordered Lee to place his hands on the headrest in front of him. Lee ignored Officer Fox's command and repeatedly moved his hands to his ankle area. Concerned that Lee was reaching for a weapon, Officer Fox ordered Lee out of the car. He arrested Lee after a pat-down search revealed a baggie of rock cocaine in Lee's sock. Lee admitted he intended to sell the cocaine, but the officers interrupted the sale.

The State initially charged Lee with possession of cocaine but later amended the charge to possession with intent to manufacture or deliver cocaine. Lee unsuccessfully moved pretrial to suppress the cocaine pursuant to CrR 3.6.[1] Lee complained about his attorney, the proceeding's unfairness, and the State's expired plea offer to simple possession. In response, the court asked the State about the offer. The deputy prosecutor explained that the offer had expired the previous week, but "if defense counsel were to approach me wanting to plead, that's something I could take up." Report of Proceedings (RP) (Oct. 16, 2012) at 202. The court responded, "Then maybe we should have him and you discuss it." RP (Oct. 16, 2012) at 202. Lee told the court, "Thank you. That's all I'm saying." RP (Oct. 16, 2012) at 202. The court told the deputy prosecutor, "If it was a fair offer a week ago...it's a fair offer today. I'm not telling him to take the offer. I'm not telling you you have to put it on the table." RP (Oct. 16, 2012) at 202. Lee responded, "Exactly. That's all I'm saying." RP (Oct. 16, 2012) at 203. The court continued:

---

[1] He also moved unsuccessfully to suppress his statements under CrR 3.5

I want to make sure the defendant knows what his options are and knows what could go wrong and what the worst-case scenario is as opposed to the best-case, that he's had the opportunity to talk to [defense counsel] about the risks and that he's made an intelligent decision to either take or forego the offer.

RP (Oct. 16, 2012) at 203-04. After further discussion about the plea offer and the court's suppression ruling, the court continued:

So under those facts it's still a case of a small amount of cocaine apparently found on you. It would appear to me that it's still a case that probably ought to be resolved, but I can't make them put an offer on the table and I can't make you take the offer nor can I even try to persuade you to take the offer. Because if I try to twist your arm, get you to take the offer and you do and you goes [sic] up on appeal, then you'll say rightly I was coerced by the judge into accepting the offer. And the Court of Appeals would say that's true. And I can't make the State put the offer on the table. All I can suggest to the State is let's be reasonable, it was a good offer before, it's not a lot to say it's a bad offer today.

RP (Oct. 16, 2012) at 210. Lee responded, "That's all I'm asking." RP (Oct. 16, 2012) at 210. The court addressed the State, "Counsel, whatever the current offer is needs – if there's one needs to be conveyed to him. That's all I want. If the State says there's no offer, you know, I can't make you put an offer on the table." RP (Oct. 16, 2012) at 211. Lee responded, "But be fair." RP (Oct. 16, 2012) at 211. The court told Lee:

I don't know if you're inclined to take an offer or consider an offer or even want another offer. A lot of times we get to the stage of trial and the defense says, you know, I'm going to win this case, frankly, I don't care about an offer. That's up to you.

RP (Oct. 16, 2012) at 212. Lee responded, "Yeah. I mean, just like you said, at least, I got a choice . . . ." RP (Oct. 16, 2012) at 212. The trial court suggested to the deputy prosecutor, "So, if it would be productive to go down, talk to your office and say, you know, what offer is appropriate to put on the table now. If not, then we'll go pick a jury." RP (Oct. 16, 2012) at 212-13.

-3-

After a brief recess, the State offered to allow Lee to plead guilty to one count of solicitation to deliver cocaine. The deputy prosecutor explained the standard range sentence, the offender score calculation, and its sentence recommendation. The court also explained the State's plea offer to Lee, including the standard range for the charged offense.

Lee continued to express confusion and dissatisfaction with the court's ruling on his suppression motion. The court responded with an extended explanation of the suppression ruling and further discussion about the offender score calculation for the charged offense and the plea offer offense.[2] The court continued:

> Let me tell you, Mr. Lee, my concern, it's always something I have to be concerned about is that frequently things go wrong, a conviction comes up, things go badly and then the defendant says, Judge, can I go back in time and do a redo and I go back and take what I turned down, and the answer is no, you can't.
> And then it will go up on appeal and your argument to the Court of Appeals is, well, I didn't take it because I didn't know. Well, it's my job to make sure you know, you understand, and that if you say no to this offer you're doing it understanding the consequences, the potential consequences.

RP (Oct. 16, 2012) at 225. The court then acknowledged that jurors were waiting.[3] The deputy prosecutor stated, "And so it's clear for the defendant, the [new] offer will remain open until 4:00 p.m. so that there's a clear time." RP (Oct. 16, 2012) at 235. After another brief recess, Lee accepted the plea.

---

[2] As to the court's extensive explanation to Lee, his attorney said, "Your Honor, it's unusual that we have this level of discussion with the bench." Lee agreed, "It is." RP (Oct. 16, 2012) at 224.

[3] By this time, jurors had been waiting for two days.

At sentencing, Lee moved to withdraw his plea. He argued that his plea was not voluntary because (1) he had unspecified mental health issues, (2) he did not have enough time to consider the offer before voir dire was scheduled to begin, and (3) defense counsel was ineffective. The court denied Lee's motion. Lee appeals.

DISCUSSION

Involuntary Plea

Due process requires a defendant's guilty plea to be made knowingly, intelligently, and voluntarily. State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). "Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). A court must allow a defendant to withdraw a guilty plea as necessary to correct a manifest injustice. CrR 4.2(f). A manifest injustice occurs when a defendant's plea was involuntary. State v. Saas, 118 Wn.2d 37, 42, 820 P.2d 505 (1991).

Lee argues that his plea was rendered involuntary by the court's intervention in plea negotiations. He claims that the court's recommendation that the State renew its plea offer and its statement that "frequently things go wrong" at trial pressured him into accepting the plea.

A defendant challenging the voluntariness of his plea bears a heavy burden to show that the plea was coerced. State v. Frederick, 100 Wn.2d 550, 558, 674 P.2d 136 (1983), overruled on other grounds by Thompson v. Dep't of Licensing, 138 Wn.2d 783, 982 P.2d 601 (1999). The task is especially difficult "where there are other apparent reasons for pleading guilty, such as a generous plea bargain or virtually incontestable evidence of guilt." Frederick, 100 Wn.2d at 558. When a defendant signs a written plea

statement, acknowledges that he has read and understood it, and then participates in an extensive colloquy with the court, the presumption of voluntariness is "well nigh irrefutable." State v. Perez, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982). However, when a trial court pressures or coerces a defendant, that influence may render the guilty plea involuntary. State v. Wakefield, 130 Wn.2d 464, 473, 925 P.2d 183 (1996). "Trial judges are to refrain from offering defendants any advice, direct or implied, about the wisdom of pleading guilty." State v. Watson, 159 Wn.2d 162, 165, 149 P.3d 360 (2006).

Here, Lee fails to establish that the court's actions undermined the voluntariness of his plea. The record shows that the court did not advise Lee to plead guilty. After Lee voiced his disappointment over a prior plea offer's expiration, the State expressed willingness to extend a new offer. The court then conducted a lengthy colloquy with Lee about his options. The court explained that the evidence against Lee was strong because the State would be permitted to introduce the cocaine found in Lee's sock. The court compared the sentencing range if Lee was convicted at trial with the sentencing recommendation the State would make under the plea. The court emphasized that only Lee could decide whether to accept or reject the offer and that he should do so after consulting with defense counsel. The court's "frequently things go wrong" comment, in context, was meant to relay the court's own experience that defendants often express a desire to accept a pretrial plea offer once convicted at trial. This comment came in response to defense counsel's remark that Lee did not understand why the State's prior plea offer expired when he chose to take the case to trial.

Lee compares his case to Wakefield and Watson. Neither case controls. In Wakefield, the defendant accepted a plea offer immediately after the court promised a standard range sentence, but the court later imposed an exceptional sentence. Wakefield, 130 Wn.2d at 469. Because it was likely the defendant relied on the court's promise in accepting the plea, the plea was deemed involuntary. Wakefield, 130 Wn.2d at 475. In Watson, it was held to be "wholly inappropriate" for the court to tell a defendant, "I really think you should take their offer," but the court's statement did not affect the voluntariness of the plea because the defendant entered his plea several months later in front of a different judge. Watson, 159 Wn.2d at 163, 165. Here, the court neither promised a more lenient sentence, as in Wakefield, nor urged Lee to take the State's offer, as in Watson.

Lee also argues that his plea was involuntary because he did not understand that by pleading guilty, he was giving up his right to appeal the court's ruling on his suppression motion. A defendant may waive his or her constitutional right to appeal, but the waiver must be made intelligently, voluntarily, and with an understanding of the consequences. State v. Perkins, 108 Wn.2d 212, 217-18, 737 P.2d 250 (1987).

In State v. Smith, 134 Wn.2d 849, 852, 953 P.2d 810 (1998), the defendant acknowledged as part of the plea agreement that he understood he was giving up the right to appeal. Smith, 134 Wn.2d at 852-53. However, defense counsel told the court that Smith reserved the right to appeal the court's suppression ruling. Smith, 134 Wn.2d at 852-53. Neither the court nor the State corrected this inaccurate statement. Smith, 134 Wn.2d at 853. Our Supreme Court determined Smith's plea was involuntary

because it was questionable whether Smith knowingly, voluntarily, and intelligently relinquished the right to appeal the suppression ruling. Smith, 134 Wn.2d at 853.

Here, while Lee expressed displeasure over the suppression ruling, the record shows he pleaded guilty after reviewing the statement on plea of guilty with his attorney. He signed the plea statement acknowledging that he read and understood its terms. The written plea statement provided that Lee waived his "right to appeal a determination of guilt after a trial." During the lengthy plea colloquy, the deputy prosecutor asked Lee if he understood that he would be giving up this right, and Lee stated that he did. The court accepted his plea, finding it was knowingly, voluntarily, and intelligently made. When Lee later made good on his earlier threat to withdraw his plea,[4] the court noted that by pleading guilty, Lee had forfeited the right to appeal the suppression hearing. Lee argued numerous grounds to support his motion to withdraw the plea below. But the record shows he never claimed that he did not know or understand that by pleading guilty, he waived the right to appeal the suppression motion. We are not persuaded by Lee's involuntary guilty plea claim.

## Statement of Additional Grounds

Lee raises several additional arguments in a pro se statement of additional grounds. He contends that his arrest constituted an unlawful seizure because CCO Tavarez did not have the authority to arrest him. But by pleading guilty, Lee waived

---

[4] The record shows that while the defense attorney reviewed the plea paperwork with Lee, Lee told his attorney that if he was later unhappy with the plea deal, he would move to withdraw the plea of guilty and allege he did not understand the nature of the plea. Plea negotiations occurred over a three-hour period.

any challenge to the legality of the search or seizure. State v. Cross, 156 Wn.2d 580, 618, 132 P.3d 80 (2006).

Lee argues that amending the charge from simple possession to possession with intent to manufacture or deliver constituted prosecutorial vindictiveness. Prosecutorial vindictiveness occurs when the State charges a defendant with a more serious crime "in retaliation for a defendant's lawful exercise of a procedural right." State v. McKenzie, 31 Wn. App. 450, 452, 642 P.2d 760 (1981). But "[a] prosecutor may increase an initial charge when a fully informed and represented defendant refuses to plead guilty to a lesser charge." State v. Bonisisio, 92 Wn. App. 783, 790, 964 P.2d 1222 (1998) (citing United States v. Goodwin, 457 U.S. 368, 378-80, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)). "If the only showing of vindictiveness is the addition before trial of new charges for which the State believes there is sufficient evidence to support a conviction, constitutionally impermissible conduct has not been shown." State v. Fryer, 36 Wn. App. 312, 317, 673 P.2d 881 (1983). Because the amended charge was based on the evidence, not prosecutorial vindictiveness, Lee's claim fails.

Lee claims that the court incorrectly calculated his offender score. He first argues that two 1998 convictions for delivery of material in lieu of a controlled substance and possession of cocaine, both class C felonies, should have washed out. Under RCW 9.94A.525(2)(c), certain class C felony convictions will not be counted in an offender score if, following release from confinement, the offender spent five consecutive years in the community without committing any crime that subsequently results in a conviction. But the State presented evidence at sentencing that Lee was incarcerated on the 1998 convictions between 1998 and 2004 and was convicted of a

new crime in 2006. Consequently, Lee's 1998 convictions do not wash out. Lee also claims the court included a 2009 conviction for possession of cocaine that was dismissed. A review of the record shows that this conviction was not used in calculating Lee's offender score.

Lee claims that his plea was involuntary because he was misinformed that the sentence carried a term of community custody. "A guilty plea is not knowingly made when it is based on misinformation regarding sentencing consequences." In re Pers. Restraint of Quinn, 154 Wn. App. 816, 835-36, 226 P.3d 208 (2010) (citing State v. Miller, 110 Wn.2d 528, 531, 756 P.2d 122 (1988)). Community custody constitutes such a sentencing consequence, and misinformation about mandatory community custody may render a plea involuntary. Mendoza, 157 Wn.2d at 588.

Here, the State correctly informed Lee that community custody would not be imposed as part of his sentence. However, at sentencing, over the State's objection, Lee requested a drug offender sentencing alternative (DOSA), in which he would be permitted to serve half of his sentence in prison while receiving substance abuse treatment and half on community custody. The court advised Lee that a DOSA carried a term of community custody:

> [LEE]: Yes, I would like to ask for a DOSA, your Honor.
> THE COURT: Are you ready to actually do some drug treatment and to be on community custody in drug treatment?
> [LEE]: Yes.

RP (Feb. 6, 2013) at 55-57. Lee's claim that he was misadvised of the sentencing consequences of his plea finds no support in the record.

Finally, Lee argues that the court erred in failing to address the merits of his motion to withdraw his plea and refusing to appoint new defense counsel. These allegations, unsupported by argument or legal authority, are too conclusory to permit review. See RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008) (appellate court will not consider statement of additional grounds for review unless it informs the court of the nature and occurrence of alleged errors).

We affirm Lee's judgment and sentence.

WE CONCUR: