MICHAEL HARTIGAN *vs.* THE TERRITORY OF WASHINGTON.

Upon the trial of a criminal cause it is the duty of the jury to accept the law, as given them by the court; therefore the addition of the words "and the law as given by the court," to the oath prescribed by statute is not error. It is only binding them, by oath, to an obligation the law had fixed upon them.

This alleged error cannot be presented to this court, except by a bill of exceptions.

Our statute authorizes the separation of a jury, in the course of a criminal trial, with the consent of the prisoner and prosecuting attorney. While such separation may be of doubtful propriety, in a capital case, it is not deemed unlawful, and a cause should not be reversed for this reason, unless the prisoner shows that he has been injured thereby.

When the prisoner and his counsel gave their consent to such separation of the jury, in the court below, they should be stopped from objecting thereto in this court.

The alleged error of admitting dying declarations cannot be considered by this court; although, upon the prisoner's showing, no error appears on the ruling of the lower court, on that question.

Error to the Second District holding terms at Vancouver.

*H. G. Struve* for plaintiff in error.

*J. M. Fletcher*, Prosecuting Attorney, for defendant in error.

Opinion by Jacobs, Chief Justice.

Plaintiff in error was indicted for murder in the first degree, and tried and convicted in the court below, at the regular March term, at Vancouver, A. D. 1874, and sentence of death passed upon him.    He thereupon sued out his writ of error, and prosecutes the same in this court.

No bill of exceptions is presented, but all the errors relied on, for a reversal of the judgment, are alleged to appear on the face of the record.

The following is a particular assignment of errors in the precipe, and alleged to have been committed in the trial of the cause in the court below:

1.    The jury in the cause were not sworn as required by law.

2.    The jury in said cause were permitted to separate, at various times, during the progress of the trial of said cause, and before the rendition of their verdict.

3.    The admission by the court of illegal testimony, to wit: The paper purporting to be the dying declaration of the deceased, August A. Vahwinkle.

4.    The decision of the court, overruling the motion for a new trial, for the reasons stated in the motion, and the affidavits therewith filed.

5.    The judgment rendered is contrary to the law and the facts and void for insufficiency and uncertainty.

Of these, in their order:

The affidavit for a new trial shows that the following oath was administered to the trial-jury.    "They were sworn, to well and truly try the issue in the cause now on trial, wherein the Territory of Washington is plaintiff and Michael Hartigan, the prisoner at the bar, whom they have in charge, is defendant,

and true deliverance make, according to the evidence and the law as given by the court."

Waiving, for the present, the question whether the plaintiff in error can raise this question in the manner he has attempted to, it will be observed, on inspection of Section 245, of the criminal code, that the oath administered to the jury is the oath prescribed by statute with the addition of the words "*and the law as given by the court.*"

It must be conceded that if this addition to the oath changes the duty or obligation of the jury toward the defendant in the trial, the judgment ought to be reversed and a new trial granted. We are aware that there is a conflict of authority upon the question of the right of the jury to judge of the law as well as the fact. This conflict arises from the different construction of constitutional and statutory provisions, and from different views entertained as to the legal effect of the conceded fact, that the jury may find a general verdict compounded of law and fact, and if it is for the defendant, and is plainly contrary to the law, either from mistake or a willful disregard of the law, there is no remedy. In some of the states, the jury are made judges of the law and fact in criminal cases by statutory and constitutional provisions. Such is the case in Maine, Vermont, Tennessee, Indiana, and Georgia.

Our statute provides, in Section 249 of the criminal code, that "the court shall decide all questions of law, which shall arise in the course of the trial. The same laws in relation to giving instructions to the jury by the court, and the argument of counsel and taking exceptions, as is now provided in the civil practice act, shall also govern in criminal cases, except as herein specially provided."

Touching the point under consideration there are no special provisions in the criminal code. Turning to the civil practice act, we find the following sections:

Sub. 6, of Section 223, makes it the duty of the court to charge the jury upon the law in the case; he is to state in such charge all matters of law necessary for the information of

57

the jury in finding a verdict and, if it becomes necessary for him to allude to the evidence, he is to tell them that they are the exclusive judges of all questions of fact.

Section 225 is as follows: "All questions of law, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes, and other writings, and other rules of evidence, are to be decided by the court, and all discussions of law addressed to it."

Section 226 is as follows: "All questions of fact other than those mentioned in the section preceding (Section 225), shall be decided by the jury, and all evidence thereon addressed to them."

These sections point out distinctly the province of the court and that of the jury. All discussions of law questions must be addressed to the court and not to the jury. And why? Because it is not only the province but the duty of the court to decide all questions of law.

All questions of fact must be addressed to the jury, because it is their province and duty to decide such questions. There is no appeal from the judge to the jury upon law propositions, and there ought not to be as a matter of principle; for every citizen of this territory has a right to the benefit and protection of the law.

"Whilst he is liable to its penalties, he has a right to be tried by law, and he is entitled to the authoritative declaration and application of the law to his case, as his best and highest protection. It is manifestly of the highest importance in order to effect such protection of the rights of parties that the laws to which they are amenable shall be fixed and permanent, impartially applied to all persons and cases alike, and not fluctuating and variable. These provisions manifest an ardent desire and a wise determination to make the law paramount and supreme over all the powers and influences of will or passion, of interest or prejudice, whether of the few or the many; to render it stable, impartial and equal in its operation over all who might fall under its animadversion or require its protection." 10 Metcalf, 278 and 279.

A juryman is just as much bound by the laws of this territory as any other citizen. He acquires no right to disregard that law simply because he has taken an oath as juryman to aid in its administration.

. The courts have been established in the distribution of powers under our government to interpret and expound the laws and to make an authoritative declaration of what the law is, and he is bound in his province as juryman to regard such declaration. Such we believe to be the sounder and better principle—a principle in strict harmony with the distribution of power under our system of government. Such, we believe to be the rule in the federal courts and such is the rule in New Hampshire, Massachusetts, Rhode Island, New York, Pennsylvania, Virginia, North Carolina, Ohio, Kentucky, Alabama, Missouri, Arkansas, California, and Texas. 3 Wharton C. L., Sections 3100 to 3109.

The case of *Maher vs. The State*, (3 Minnesota, 444) so much relied upon by the learned counsel for plaintiff in error, is in our judgment not in point. There are in that state two forms of oaths to be administered to trial-juries in criminal cases, the same as those prescribed by our statute. In a capital case the form of oath prescribed for a case not capital was administered, the point was saved by bill of exceptions, the case taken to Supreme court for review and the judgment reversed, and we think rightly. The whole oath was wrong.

. But in this case the oath administered was the oath prescribed by statute with the superfluous addition of a clause containing matter implied by law. We are all of the opinion that this point ought to have been brought here by bill of exceptions. 8 Ohio S. R., 102.

Had it not been for the importance of the questions involved, we should not have felt it our duty to examine and decide the point. See *Augustus Lytle vs. The Territory*, decided at this term.

. As the oath then only required the jury to do what they were required to do, otherwise we find no error in the record.

The second error assigned is, that the jury was permitted to separate several times during the progress of the trial.

Upon an examination of the record we find they did so separate, but that it was by the free consent of the prisoner and his counsel, as well as the prosecuting attorney.

Section 250, of the criminal code, is as follows: "Juries, in criminal cases, shall not be allowed to separate, except by consent of the defendant and prosecuting attorney, but shall be kept together, without meat or drink, unless otherwise ordered by the court, to be furnished at the expense of the county."

Although we are of the opinion that the allowing a jury to separate, in a capital case, is of doubtful propriety, even if the prisoner and his counsel do consent, yet we are not prepared to say that such a law is not a rightful assertion of legislative power; and, if a separation takes place, with the free consent of the prisoner and his counsel, the law validates the act.

The law authorized him to do an act which, otherwise, he could not do. Before we could reverse a judgment, on any such ground, there ought, at least, to be an attempt to make a showing that the plaintiff in error was injured thereby. There is no such attempt. He and his counsel gave their free consent to the separation, and he and his counsel ought both to be estopped from raising the objection here, that such separation was unlawful.

The record shows that the court, upon each separation, instructed the jury as to their duty, and we are bound to believe that the learned judge, who presided at that court, carefully and fully instructed and warned the jury as to the rights of the prisoner, their sworn duty, and the necessity of the utmost caution and circumspection on their part.

We find no error in the record, upon this point, and hope never to see an objection raised in this court, under such circumstances.

The third and fourth assignments of error are treated in the brief of the learned counsel for plaintiff in error, together.

They both relate to the admission in evidence of certain dying declarations of the deceased. Evidence, preliminary to their admission, was duly presented to the District court and decided as sufficient to warrant their admission. No exception was taken to the ruling of the presiding judge, at the time, or during the progress of the trial. But after the trial was over, and a verdict of murder in the first degree was returned, a motion was made for a new trial and then, for the first time, affidavits were presented showing that the deceased was a skeptic, an infidel and unbeliever, and therefore alleged to be incapable of any religious sense of accountability to his Maker.

We hold, first, that the question of the correctness of the ruling of the District court on the admission of such declarations is not before us. Second, that the only way by which counsel can bring such a ruling up to this court for review is by bill of exceptions. Third, the motion for a new trial was properly denied, supported by such evidence.

There is no showing of any diligence on the part of plaintiff in error or his counsel to ascertain before or during the trial what the deceased's religious opinions were; further, the affidavits do not state that he disbelieved in the existence of a God and a state of future rewards and punishments; they merely state that he was irreligious, and believed all the religions of the day, humbugs.

The fifth and last assignment of error, in both its specifications, has been fully discussed and decided by us at this term in the case of *Augustus Lytle vs. The Territory.*

After a careful examination we find no error in the record.

We have examined all the errors assigned, although convinced that most of the alleged errors were not properly here.

We have done so on account of the importance of the case and the uncertainty of the practice, but shall not feel bound to do so after this.

The judgment of the District court is affirmed and the case remitted to the District court or judge of the Second Judicial District to fix the time of execution.