IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31218-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT MONTGOMERY NICHOLAS, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |
| | ) | |

FEARING, J. — "We thought that this issue was resolved." *State v. Moore*, 179 Wn. App. 464, 465, 318 P.3d 296, *review denied*, 180 Wn.2d 1019 (2014).

A jury found Scott Nicholas guilty of possession with intent to deliver methamphetamine, possession of marijuana, and use of drug paraphernalia. On appeal, Nicholas assigns error to the trial court's instruction on the "duty to return a verdict of guilty." Clerk's Papers (CP) at 31. As other courts have previously done, we approve the jury instruction. We also devote pages to addressing the numerous attacks by Nicholas upon the instruction.

Nicholas also argues the trial court lacked statutory authority to impose a variable term of community custody, which the State concedes as error. We affirm Nicholas'

No. 31218-6-III
*State v. Nicholas*

convictions, but accept the State's concession.

## LAW AND ANALYSIS

Neither party outlines the facts behind Scott Nicholas' convictions. The facts are unimportant. We proceed directly to our legal analysis.

### *Duty to Convict Jury Instruction*

For each of the three charges against Scott Nicholas, the trial court instructed the jury that: "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty." Clerk's Papers (CP) at 31, 41, 43. Washington decisions refer to this jury instruction as the duty to convict instruction. The language of this instruction is recommended at 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 4:21 (3d ed. 2008). Nicholas raises a familiar argument: the trial court's instruction misled the jury about its power to acquit.

Each division of this court has approved, at least once, the propriety of the duty to convict instruction. *State v. Moore*, 179 Wn. App. 464, 318 P.3d 296, *review denied*, 180 Wn.2d 1019 (2014). (Division One); *State v. Meggyesy*, 90 Wn. App. 693, 700, 958 P.2d 319 (1998) (Division One), *abrogated on other grounds by State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005); *State v. Brown*, 130 Wn. App. 767, 124 P.3d 663 (2005) (Division Two); *State v. Bonisisio*, 92 Wn. App. 783, 794, 964 P.2d 1222 (1998) (Division Two); *State v. Wilson*, 176 Wn. App. 147, 307 P.3d 823 (2013), *review denied*,

2

179 Wn.2d 1012 (2014) (Division Three). Challenges to the instruction surround the concept of jury nullification. Jury nullification occurs in a trial when a jury acquits a defendant, even though the members of the jury believe the defendant to be guilty of the charges. This may occur when members of the jury disagree with the law the defendant has been charged with breaking, or believe that the law should not be applied in that particular case. Nullification is a juror's knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to the juror's sense of justice, morality, or fairness. *State v. Elmore*, 155 Wn.2d 758, 761 n.1, 123 P.3d 72 (2005) (citing BLACK'S LAW DICTIONARY 875 (8th ed. 2004)).

Division One of this court thoroughly addressed arguments against use of the duty to convict instruction in *State v. Meggyesy*, 90 Wn. App. 693 (1998). Like Nicholas, the appellants in *Meggyesy* pointed to the jury's power to acquit against the evidence. The *Meggyesy* court noted the ability of the jury to engage in nullification, but upheld the instruction as a correct statement of law. Jury nullification "is an inherent feature of the use of general verdicts. But the power to acquit does not require any instruction telling the jury that it may do so." 90 Wn. App. at 700 (internal citations omitted). In other words, courts recognize that jury nullification occurs in practice, but we will not promote it nor educate jurors about nullification.

Scott Nicholas seeks to distance himself from appellants in previous decisions by arguing that appellants in *Meggyesy* and *Bonisisio* also asked the court to approve a jury

instruction that tells the jury it may acquit. Nicholas only asks this court to disapprove an instruction that tells the jury it has a duty to convict when the State proves all elements of the crime beyond a reasonable doubt. Nevertheless, Nicholas' distinction lacks importance. *Meggyesy* and *Bonisisio* addressed the respective appellant's objection to the duty to convict instruction as a discrete issue and did not conflate the issue with the appellant's desire for a jury nullification instruction. Nicholas also fails to observe that the courts in *State v. Moore*, *State v. Brown*, and *State v. Wilson* addressed only Nicholas' assignment of error. The appellant in *Brown* sought to distinguish his appeal on the same ground as Nicholas does here, but to no avail. 130 Wn. App. at 770-71.

Scott Nicholas contends the State violated two Washington constitutional provisions by employing the duty to convict jury instruction. Article I, section 21 provides: "The right of trial by jury shall remain inviolate." Article I, section 22 provides: "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." Nicholas maintains that, based on these constitutional provisions, the word "duty" in the jury instruction unconstitutionally impinges upon a jury's inherent power to acquit. *Meggyesy* already addressed this argument. Nicholas cites no authority to the effect that a right to a jury trial equates to a right of acquittal.

Scott Nicholas argues that the duty to convict jury instruction should not be given because the state and federal constitutions do not impose a duty upon a jury to render a

4

guilty verdict even if it finds the elements of the crime have been proven beyond a reasonable doubt. He cites no authority for this contention. A duty need not arise from the constitution, but can arise from a statute or common law.

Scott Nicholas maintains that the Washington constitution provides greater protection for the right to a jury since the state constitution reads that the right shall remain inviolate. He argues the difference in language from the United States constitution suggests the drafters of the state constitution meant something different from the federal Bill of Rights. He cites the late Hon. Robert F. Utter's seminal article, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U. PUGET SOUND L. REV. 491, 515 (1984). Nevertheless, Justice Utter's article does not support jury nullification nor does it criticize a duty to convict instruction. Nicholas does not explain how the difference in language between the Washington and federal constitutions establishes a constitutional right to jury nullification.

In *State v. Meggyesy*, 90 Wn. App. 693 (1998), Division One ably analyzed, under *State v. Gunwall*, 106 Wn.2d 54, 59, 720 P.2d 808 (1986), the state constitution's difference in language from the federal constitution's jury trial right provision. After engaging in the six step analysis, the court held the Washington constitution does not support jury nullification nor preclude the giving of a duty to convict instruction. *Meggyesy*, 90 Wn. App. at 701-05. We cannot improve on *Meggyesy's Gunwall* analysis.

5

No. 31218-6-III
*State v. Nicholas*

Scott Nicholas contends the right to a jury trial is so fundamental that any infringement violates the constitution. He cites no authority supporting a conclusion that a fundamental right precludes instructing a jury that it holds a duty to convict. He does not explain how imposing a duty to convict on the jury, if the State proves its case beyond a reasonable doubt, infringes on the constitution.

Scott Nicholas contends two territorial decisions support the rendering of a jury nullification instruction or at least an instruction that informs the jury it "may" rather than "must" convict upon the government's meeting its burden of proof. Based on these two decisions, Nicholas argues that the state's 1889 constitution was adopted under such a legal background such that the constitution adopted jury nullification and disapproved the duty to convict instruction. The two decisions are *Hartigan v. Territory of Washington*, 1 Wash. Terr. 447 (1874) and *Leonard v. Territory of Washington*, 2 Wash. Terr. 381, 7 P. 872 (1885).

*Hartigan v. Territory of Washington* disassembles Scott Nicholas' argument. The territorial Supreme Court ruled that the judge declares the law of the case. The court wrote:

> A juryman is just as much bound by the laws of this territory as any other citizen. He acquires no right to disregard that law simply because he has taken an oath as juryman to aid in its administration.

1 Wash. Terr. at 451.

6

In *Leonard v. Territory of Washington* the trial court instructed the jury, in part: "If you find the facts necessary to establish the guilt of defendant, proven to the certainty above stated, then you *may* find him guilty of such a degree of crime as the facts so found show him to have committed." 2 Wash. Terr. at 399 (emphasis added). Nevertheless, the territorial high court did not address the validity of the jury instruction. No preconstitutional state decision approves jury nullification or disapproves of a duty to convict instruction. The *Meggyesy* court also rejected this same argument.

Scott Nicholas claims he reframes the standard defense argument to avoid the precedents of *Meggyesy* and *Bonisisio* by focusing on the word "duty." Nicholas defines "duty" as "[a]n act or a course of action that is required of one by . . . law," citing *The American Heritage Dictionary* (4th ed. 2000). Nicholas argues the use of the word "duty" misstates the law because it requires a jury to convict if it finds that the State proved all of the elements of the charged crimes. We disagree. Division Two, in *State v. Brown*, also disagreed. 130 Wn. App. at 771. None of Nicholas' arguments are new under the sun.

Judges must declare the law, while jurors must swear to faithfully apply that law. Our state constitution requires: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." CONST. art. IV, § 16. The judge must be permitted to instruct the jury on the law and to insist that the jury follow his or her instructions. *United States v. Gaudin*, 515 U.S. 506, 513, 115 S. Ct. 2310, 132 L. Ed.

7

2d 444 (1995); *Sparf v. United States*, 156 U.S. 51, 105-06, 15 S. Ct. 273, 39 L. Ed. 343

(1895). Jurors swear an oath to faithfully apply the law. RCW 4.44.260 requires:

> When the jury has been selected, an oath or affirmation shall be administered to the jurors, in substance that they and each of them, will well, and truly try, the matter in issue between the plaintiff and defendant, and *a true verdict give, according to the law* and evidence as given them on the trial.

(Emphasis added.) The use of the word "duty" is consistent with the oath requirement

that the jury give a true verdict, and that it does so according to the law and evidence.

Scott Nicholas contends an accused may have no right to a jury instruction stating

that the jury can ignore the law, but the State holds no corresponding right to a jury

instruction that tells the jury it cannot ignore the law. RCW 4.44.260 reads otherwise.

Scott Nicholas identifies several rules that preclude a court's interference in a

jury's deliberation and verdict. For example, a court may never direct a verdict of guilty

in a criminal case. *United States v. Garaway*, 425 F.2d 185, 185 (9th Cir. 1970); *State v.

Primrose*, 32 Wn. App. 1, 4, 645 P.2d 716 (1982). A court may not punish jurors for the

jury verdict. *Bushel's Case*, 124 E.R. 1006 (1670). A court should not inquire into the

substance of jury deliberations or the thought process of any particular juror. *State v.

Berniard*, 182 Wn. App. 106, 119, 327 P.3d 1290 (2014). A trial court should not

dismiss a juror accused of jury nullification if there is a reasonable possibility that the

accusation arises from the juror's views of the merits of the case. *State v. Elmore*, 155

Wn.2d at 778. Scott Nicholas argues that these rules demand a court refrain from

8

delivering a duty to convict instruction. Nevertheless, courts created these rules to protect the cherished right to a jury trial. To protect this right, courts indulge a strong presumption that a jury functions wisely and within the law. The right to a jury trial under these circumstances trumps the jury's obligation to obey the law. A defendant should not take advantage of these protections by demanding jury nullification.

Scott Nicholas reasons that, if a court may not direct a verdict, the jury must be free to ignore the law and instructing the jury otherwise is wrong and misstates the law. The answer to this contention has already been given. The ability to acquit does not require any instruction telling the jury that it may do so. *Meggyesy*, 90 Wn. App. at 700.

Scott Nicholas' argument omits recognition of rules that discourage jury nullification. The state of Washington may remove from the jury panel a potential juror who refuses to obey state law authorizing the death penalty. *State v. Cross*, 156 Wn.2d 580, 597, 132 P.3d 80 (2006). A juror who engages in jury nullification may be excused. *State v. Morfin*, 171 Wn. App. 1, 7-8, 287 P.3d 600 (2012), *review denied*, 176 Wn.2d 1025 (2013). These rules presuppose that jurors must obey the law.

Scott Nicholas observes that, if a duty to convict exists, the law lacks any method of enforcing it. We agree with this observation. It does not follow, however, that a court cannot or should not instruct the jury it must follow the law. Many other laws may lack methods of enforcement or lack practical methods of enforcement. A lack of enforcement measures does not render the law invalid.

9

Scott Nicholas retraces a history in the United States of jury nullification. He provides examples of nullification as if to argue we should follow such examples. We could add to those examples. In 1734, a colonial jury acquitted John Peter Zenger of seditious libel against the New York colonial governor. Pre-Civil War era juries sometimes refused to convict for violations of the Fugitive Slave Act. Later, during prohibition, juries often nullified alcohol control laws. This resistance contributed to the repeal of prohibition.

Justice Story dealt a blow to jury nullification in a crucial ruling in *United States v. Battiste*, 24 F. Cas. 1042 (C.C.D. Mass. 1835) (No. 14,545). Justice Story sustained the conception that the jury's function lay in accepting the law given to it by the court and applying that law to the facts. This reasoned ruling of an influential jurist won increasing acceptance in the nation. By 1835, a youthful passion for independence succumbed to the reality that former rebels now controlled their own destiny. The practical needs of stability and sound growth outweighed the abstraction of centrifugal philosophy. Judges were no longer colonial appointees projecting royalist patronage and influence but contributed to the nation's intellectual mainstream, subject to the checks of the common law tradition and professional opinion. In Washington, we elect judges such that an arbitrary judge may be voted out of office.

In 1895, the United States Supreme Court ended any seeds of acceptance of jury nullification in the federal courts. In *Sparf v. United States*, 156 U.S. 51, 15 S. Ct. 273,

39 L. Ed. 343 (1895), the Court held 5 to 4 that a trial judge has no responsibility to inform the jury of the right to nullify laws. The jury's role was respected as significant and wholesome, but it was not to be given instructions that articulated a right to do whatever it willed. Washington courts have accepted the fact that jury nullification occurs, but the courts have never promoted the practice.

Scott Nicholas employs rhetorical flourishes to promote jury nullification and to reject a jury instruction informing the jury it must convict upon proof of the elements of the crime. Nicholas argues that the purpose behind a jury is to take power away from an abusive and powerful government and from judges beholden to the government. Jury nullification prevents a majority from imposing its will on a minority. Nullification precludes prosecutorial abuse of power. Nicholas does not observe that, in Washington, we elect prosecuting attorneys who can be voted from office.

Scott Nicholas and proponents of jury nullification fail to recognize the harm caused by and a hideous history of abuse of nullification. On August 28, 1955, Roy Bryant and his half-brother J. W. Milam kidnapped fourteen-year old Emmett Louis Till, an African-American who reportedly flirted with Bryant's wife, in Money, Mississippi. The brothers removed Till to a barn, where they beat him, gouged out one of his eyes, and shot him through the head. They disposed of the body in the Tallahatchie River, by tying a cotton gin fan around the boy's neck with barbed wire. The following month, a jury acquitted Bryant and Milam of kidnapping and murder. The half-brothers, being

11

protected by double jeopardy, publicly admitted in an interview with *Look* magazine that they killed Till.

In 1963, Byron De La Beckwith assassinated NAACP leader Medgar Evers outside Evers' Jackson, Mississippi home. The state twice prosecuted De La Beckwith for murder in 1964, but both trials ended with hung juries. During the second trial, former Governor Ross Barnett interrupted the trial to shake hands with Beckwith while Evers' widow testified. De La Beckwith thereafter repeatedly bragged about the murder.

We could provide other examples of jury nullification resulting in extreme injustice. Many, who never complained of jury nullification in the south, objected to the acquittal of O. J. Simpson as a form of nullification.

A fundamental value of America is the rule of law rather than rule by men. The Washington populace justifiably does not want activist judges who base decisions upon political views or moral judgments. The same should hold true for jurors. Jury nullification destroys the rule of law upon which America is based. As the 1992 Los Angeles riots evidence, nullification engenders anarchy.

The rest of this opinion is unpublished because it lacks precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.

### *Variable Term of Community Custody*

Scott Nicholas contends the trial court lacked statutory authority to impose a

variable term of community custody. The State concedes error and we accept the concession.

A trial court may only impose sentences that statutes authorize. *State v. Albright*, 144 Wn. App. 566, 568, 183 P.3d 1094 (2008). Previously, a court could impose a variable term of community custody under RCW 9.94A.715. But our legislature repealed RCW 9.94A.715 in 2008 in favor of fixed terms of community custody. LAWS OF 2008, ch. 231, § 57; LAWS OF 2009, ch. 28, § 42. Under the amended statute, RCW 9.94A.701(1)-(3), a court may no longer sentence an offender to a variable term of community custody contingent on the amount of earned release, but it must instead determine the precise length of community custody at the time of sentencing. *State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011). Therefore, Scott Nicholas' contingent sentence, the longer of the period of early release or 12 months, violates RCW 9.94A.701.

*Statement of Additional Grounds*

In his statement of additional grounds (SAG), Scott Nicholas asks a series of questions and alleges errors for which the current record is insufficient to review.

Nicholas asks: "Is there case law used to determine how much the amount of methamphetamine is considered a possession / versus possession with intent to deliver?" SAG at 1. We refrain from answering the question because Nicholas forwards no facts to show this question relevant to the appeal. This court avoids deciding issues unnecessary

to the resolution of a case, and also avoids rendering advisory opinions where there is no real justiciable controversy. *Cena v. Dep't of Labor & Indus.*, 121 Wn. App. 915, 924, 91 P.3d 903 (2004).

Scott Nicholas also complains that the State failed to list Detective Michael Kallio as a witness for the CrR 3.5 suppression hearing. We reject this complaint because Kallio testified only at trial.

Scott Nicholas appears to argue that he received ineffective assistance from counsel. To convict Nicholas, the State relied on testimony that he safeguarded methamphetamine for his girlfriend in order to argue that Nicholas planned to return the methamphetamine to her, thus showing that he intended to deliver the methamphetamine. Nicholas now asserts that he did not understand that "delivery" includes returning someone else's property to her. He avers that, had he understood the full extent of the meaning of "delivery," he would not have testified. Nicholas claims his defense counsel did not adequately advise him on this subject. He concedes, however, that he and his defense counsel "did discuss this issue about the bag of methamphetamine that belonged to my girlfriend before trial." SAG at 4. On the current record, and in light of Nicholas' concession, Nicholas cannot show counsel to be ineffective.

Scott Nicholas further complains that the local newspaper ran a story about him, which interfered with his right to a fair trial and impartial jury. Nicholas neither claims nor shows that any juror read this story. Nor does Nicholas explain how the story

14

No. 31218-6-III
*State v. Nicholas*

otherwise impacted his trial. Thus, we are unable to conclude that the story thwarted his right to a fair trial.

## CONCLUSION

We affirm Scott Nicholas' convictions but remand with instructions for the trial court to impose a fixed term of community custody.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

15