IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 80917-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHARLES ALEXANDER MARTIN, aka | ) | |
| CHARLES ALEXANDER TRAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Charles A. Martin was convicted of robbery in the first degree following a jury trial. At trial, Martin asserted that he was not guilty by reason of insanity based on his belief that he was in a video game at the time of the robbery. The jury convicted Martin as charged. Martin now appeals, arguing an instruction by the court referencing jury nullification that was given at the beginning of voir dire was reversible error. He further challenges the imposition of discretionary community custody supervision fees after the trial court found him indigent, which the State concedes was improper. Finding no error as to the instruction, we affirm, but remand to strike the supervision fees from Martin's judgment and sentence.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Charles A. Martin was charged with robbery in the first degree arising from events which occurred on May 2, 2016. Chuck Quartarolo was in his 1999 Chevrolet Blazer outside of his son's home around 5 a.m., waiting to drive him to work. A man wearing only his underwear suddenly appeared at the side of the Blazer, shouting and knocking on the car. The man was later identified as Martin, who did not know Quartarolo. Martin then yanked open the car door, punched Quartarolo twice in the jaw, and said "Get the fuck out of the truck." Martin then pulled Quartarolo out of the vehicle and punched him again.

Martin got into the Blazer and drove away. However, he did not get very far as the vehicle stalled at a nearby stop sign. Martin then abandoned the vehicle and ran across the street. Quartarolo ran into his son's house and the police were called. Law enforcement arrived within minutes and attempted to locate Martin with a K-9 unit. The K-9's perimeter search led to an area of thick brush. While the K-9 was tracking the scent, its handler kicked aside a real estate sign on the ground and discovered Martin hiding there. Martin was taken into custody and asked the deputy, "Did I steal a car? I don't remember." Responding law enforcement officers had not mentioned anything about a stolen vehicle to him. Martin made several unsolicited statements to the deputy, describing what happened. He initially stated that he did not remember what had occurred, but then said it was "coming back" to him. Martin elaborated that he approached Quartarolo and asked Quartarolo if he thought Martin was high. Martin admitted to punching Quartarolo and trying to steal his car before going into the bushes.

Over two years later, in August of 2018, Martin spoke with a forensic psychologist, Dr. Paul Spizman, in preparation for trial. He told Spizman that he believed he was playing a video game, Grant Theft Auto, which dictated that he steal a car. Martin told Spizman what he was thinking during the incident. As a result, Spizman concluded that because Martin believed he was in the video game, he did not form the intent to steal the vehicle from a real human being or to assault a real person. Testifying as an expert for the defense, Spizman opined that Martin's ability to conform his behavior to the requirement of the law was affected to a significant degree due to psychosis on the morning in question. Spizman believed the psychosis could have been drug-induced. This theory was the basis for Martin's not guilty by reason of insanity defense.

During voir dire, the trial court asked several general questions of jurors. Following the initial inquiry, the court stated:

> So there's a thing known as the doctrine of jury nullification. The idea of jury nullification is that jurors ought to be able to come in and say, you know, we're just going to do what we think is right. And that's not allowed because I don't get to do what I think is right. I mean I do in the sense that as long as I'm following the law, that's okay. That is the idea of justice. But I have to be following the law, that's okay. That is the idea of justice. But I have to be following the law. I can't go out on my own and just say, you know, I think this is the way the law ought to be and I'm going to make it that way. So jurors are required to follow the instructions that you are given.
>     Hence, my next question: Would any of you be unable to assure the Court that you will follow the instructions on the law regardless of what you think the law is or what you think it ought to be? Getting no positive responses there.
> . . .
>     So does anyone have any reason whatsoever why you think you should not be selected as a juror to sit on this case? Other than something that you've—might have already noted? Okay, thank you very much.

Immediately after the court's remarks, defense counsel requested a side bar and objected to the court's instruction on jury nullification. Martin's attorney explained he did not object immediately following the statement because his understanding was that the law expressly prohibited him from discussing nullification in the presence of the jury. He further asserted that nullification could not be discussed with jurors by anyone involved in the proceedings. The judge disagreed, stating "I had a poor choice of words when I used the word you can't go off and do what you think is right," but indicated that ultimately his instruction was proper because "I did correct myself on [sic] in front of the jury and indicate well, actually you can as long as it's within the instructions."

At trial, the State presented testimony from Dr. Lauren Smith, a forensic psychologist from Western State Hospital, who had evaluated Martin. Smith concluded Martin had the capacity to form the requisite intent at the time of the offense. Martin had told Smith that he did not remember anything from the incident except waking up in the bushes. Smith's opinion was based on Martin's goal-directed behavior and his unprompted statements to police upon arrest. She further noted there was absolutely no indication that Martin was not aware of what he was doing.

Martin testified at trial and indicated that he had been staying inside since he learned, after police seized one of his cars, that he had an outstanding warrant and law enforcement were looking for him and his vehicles. He admitted that he lied to mental health professionals when necessary to "get[] out of consequences." Martin indicated on cross examination that he was "not so much" thinking he was

in a video game, but instead "reacting accordingly." His testimony provided a contradictory story of the events at issue, alternating between claiming that he did not remember and offering details or explanations about his actions.

The jury convicted Martin as charged. The trial court sentenced him to 57 months of incarceration, followed by 18 months of community custody. The court found Martin indigent and only imposed mandatory fees and costs, but the preprinted language in the judgment and sentence required Martin to "[p]ay supervision fees as determined by the Department of Corrections." Martin now appeals.

ANALYSIS

Martin argues that the trial court improperly instructed the venire as to jury nullification at the start of voir dire. "The adequacy of jury instructions is reviewed de novo." State v. Espinosa, 8 Wn. App. 2d 353, 361, 438 P.3d 582 (2019). "Jury nullification occurs in a trial when a jury acquits a defendant, even though the members of the jury believe the defendant to be guilty of the charges." State v. Nicholas, 185 Wn. App. 298, 301, 341 P.3d 1013 (2014). "[T]he power of nullification is rooted in courts' unwillingness to inquire into deliberations because jurors can agree to acquit on virtually any basis without court knowledge." State v. Ward, 8 Wn. App. 2d 365, 376, 438 P.3d 588 (2019). Our courts do not inquire into the jury's verdict out of respect for our judicial system. State v. Moore, 179 Wn. App. 464, 468, 318 P.3d 296 (2014). The power of a jury to nullify does not stem from any legal right. Id. To reinforce this, neither our state nor federal

constitution provide a right to nullification.  Nicholas, 185 Wn. App. at 303; United States v. Kleinman, 880 F.3d 1020, 1035 (9th Cir. 2017).

The jury's power to nullify is in stark contrast with its duty to uphold the law. "The jury's duty to uphold the law has existed in Washington since the state was a territory."  Moore, 179 Wn. App. at 467.  There is, however, no remedy where a jury nullifies, but this is not because the jury is without a duty to uphold the law.  Id. at 468.  For well over a century, our state has acknowledged a juror is "just as much bound by the laws of this territory as any other citizen.  [They] acquire[] no right to disregard that law simply because [they have] taken an oath as [juror] to aid in its administration."  Hartigan v. Territory, 1 Wash. Terr. 447, 451 (1874) (alterations in original).

Judges are to declare the law, while jurors must swear to faithfully apply the law.  Nicholas, 185 Wn. App. at 304.  "The judge must be permitted to instruct the jury on the law and to insist that the jury follow his or her instructions."  Id.  "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."  WASH CONST. art. IV, § 16.

Here, Martin focuses on a statement by the judge during voir dire, prior to empaneling the jury, which was:

> So there's a thing known as the doctrine of jury nullification. The idea of jury nullification is that jurors ought to be able to come in and say, you know, we're just going to do what we think is right. And that's not allowed because I don't get to do what I think is right. I mean I do in the sense that as long as I'm following the law, that's okay. That is the idea of justice. But I have to be following the law. I can't go out on my own and just say, you know, I think this is the way the law ought to be and I'm going to make it that way. So jurors are required to follow the instructions that you are given.

Hence, my next question: Would any of you be unable to assure the Court that you will follow the instructions on the law regardless of what you think the law is or what you think it ought to be? Getting no positive responses there.

. . .

So does anyone have any reason whatsoever why you think you should not be selected as a juror to sit on this case? Other than something that you've—might have already noted? Okay, thank you very much.

Following these remarks by the court, Martin requested a sidebar and objected to the court's statements regarding nullification. After the discussion at sidebar, the objection was taken up on the record outside of the presence of the jurors. Martin reinforced his position that the court improperly discussed nullification with the jury. The judge acknowledged, "I think my wording—I had a poor choice of words when I used the word you can't go off and do what you think is right, which I did correct myself on [sic] in front of the jury and indicate well, actually you can as long as it's within the instructions." The judge reinforced that this correction was in line with the Washington Pattern Jury Instruction (WPIC)[1] "that indicate[s] that you must follow the law regardless of what you personally believe the law is or ought to be." Martin made clear that his objection was not to the court instructing the jury that they must follow the law, but specifically "tying that to jury nullification."

In his briefing on appeal, Martin primarily relies on Kleinman for the proposition that the court should avoid language or inferences that would indicate the jury may not acquit if the evidence of guilt is clear. 880 F.3d 1020. One of the written jury instructions provided by the trial court in Kleinman stated:

"You cannot substitute your sense of justice, whatever that means, for your duty to follow the law, whether you agree with it or not. It is

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 (2d ed. 1994)

> not for you to determine whether the law is just or whether the law is unjust. That cannot be your task. There is no such thing as valid jury nullification[.] You would violate your oath and the law if you willfully brought a verdict contrary to the law given to you in this case."

Id. at 1031.

Kleinman was on trial for numerous federal crimes based on the operation of his medical marijuana collective storefronts which he alleged complied with state law. Id. at 1025–26. The court decided to give this instruction because protestors gathered in front of the courthouse were urging the jury to disregard the federal law. Id. at 1031 n.3. The court had inquired with each juror individually if the protestors' signs had influenced them and reinforced that they were to only focus on what occurred in the courtroom. Id. No jurors were dismissed following the court's individualized inquiries, however Kleinman asserted on appeal that this individualized inquiry by the court furthered the coercive effect of the anti-nullification instruction. Id. Kleinman's primary argument was that the "instructions implied that jurors would break the law, and possibly be punished, if they did not convict, and thus divested the jury of its power to nullify." Id. at 1031.

The Ninth Circuit acknowledged the instruction had been crafted based on language from two cases wherein federal courts had reviewed questions regarding jury nullification. Id. at 1031–32. The court determined the first three sentences of the instruction were appropriate as they directed the jury to follow the trial court's instructions and apply the law to the facts. Id. at 1032. However, the Ninth Circuit went on to find the last two sentences erroneous as they provided an inference that would divest the jury of its power to acquit, even though guilt may be clear. Id. at 1033. The Kleinman court went on to determine the error was subject to

harmless error review and found the instructional error as to those two sentences to be harmless. Id. at 1035–36.

Kleinman reinforces the notion that courts should limit their instruction as to nullification, such that it is not wise to mention the concept to a jury at all unless necessitated by the circumstances. However, Kleinman's finding of error is distinct from the case before us for a number of reasons. First, the case in Kleinman was controversial, because protestors had rallied outside the courthouse and expressly urged the jury to acquit via nullification. Id. at 1031 n.3. This pressure reached a degree that the court determined it was appropriate to inquire individually with each juror regarding any influence they may have felt from the demonstration. Id. This fact alone is quite distinct from Martin's circumstances where there was no indication of influence on the jury outside of the courtroom and there was no individualized inquiry such that it would inferentially influence the jury to avoid nullification. Second, and most critically, the instruction by the court in Kleinman was formal in that it was included amongst other written instructions provided to the jury by the judge and presumably taken with the jurors into deliberation. Id. at 1031.

In the case at hand, the challenged statement occurred when the court was working through its general instructions and questions with the venire at the start of voir dire. The instruction by the court was not written, repeated, or given once the jury was sworn. At the close of the case, the jury was properly instructed on its duty as finder of fact, without any reference to nullification. Instruction 1 contained the pattern language from WPIC 1.02 and directed, in relevant part:

> It is your duty to decide the facts in this case based upon the evidence presented to you at trial. It also is your duty to accept the law from my instructions, regardless of what you personally believe the law is or what you personally think it should be. You must apply the law from my instructions to the facts that you decide have been proved, and in this way decide the case.

The other jury instructions that were provided prior to deliberation, including the to-convict instruction and those explaining the burden of proof and elements of the charged crime, contained standard definitions and directions to the jurors. The jury is presumed to follow the court's instruction absent any evidence to the contrary. State v. Martinez, 2 Wn. App. 2d 55, 77, 408 P.3d 721 (2018). Finally, the language at issue in this case was not as strong as the statement by the court in Kleinman which "implied that jurors could face legal consequences for nullification." 880 F.3d at 1035. As such, we do not find that Kleinman, or any other authority offered by Martin, supports a finding of error here.

The analysis in United States v. Lynch, a Ninth Circuit opinion issued not long after Kleinman, is much more instructive to the case at hand. 903 F.3d 1061 (9th Cir. 2018). In Lynch, defense counsel made numerous comments and asked questions during voir dire that appeared to broach the topic of jury nullification. Id. at 1078–79. A juror eventually responded, "I understand that completely. I believe there is something called jury nullification, that if you believe the law is wrong, you don't have to convict a person." Id. at 1078. As a result of this exchange, the district court halted voir dire to instruct:

> Nullification is by definition a violation of the juror's oath which, if you are a juror in this case, you will take to apply the law as instructed by the court. As a . . . juror, you cannot substitute your sense of justice, whatever it may be, for your duty to follow the law, whether you agree

with the law or not. It is not your determination whether the law is just or when a law is unjust. That cannot be and is not your task.

Id. at 1079.

Following this instruction, the court inquired individually of each prospective juror if they could follow the instruction and each agreed. Id. The Ninth Circuit found the instruction by the court was proper. Id. Lynch makes clear that no juror has a right to engage in nullification and that doing so is a violation to their sworn duty to follow the law as instructed by the court. Id. The court reiterated that the Ninth Circuit has held that "a court can seek to prevent nullification 'by firm instruction or admonition.'" Id. at 1088 (quoting Kleinman, 880 F.3d at 1032). It was then reinforced that there is no right to nullification and that "[t]he district court's admonition that nullification was a violation of a jury's duty to follow the law did not deprive the jurors of their ability to nullify, since nullification is by its nature the rejection of such duty." Id. at 1080.

Here we have nothing in the record to indicate the attorneys attempted to discuss nullification with the jury, particularly before the comment by the judge because voir dire had just begun with the court's initial inquiry to prospective jurors. The fact that this instruction was conveyed during voir dire, as opposed to later in the case as part of the formal written jury instructions, makes Lynch more analogous to the comments by the court in the case before us. The language in Lynch is also similar to the language used here in that both were more duty focused, informing the jury of their obligation, as opposed to the judge's discussion of violating the oath and directive that "'there is no such thing as valid jury nullification'" in Kleinman. 800 F.3d at 1031. Most critically, Martin's challenge is

- 11 -

identical to that of Lynch's: "that the [trial] court's instruction inhibited the jurors from being willing to nullify the charges against him." 903 F.3d at 1080. Importantly, Lynch continues, "but this was also not a violation of any legal right." Id. The logic of Lynch applies equally here; the "court's admonition that nullification was a violation of a jury's duty to follow the law did not deprive the jurors of their ability to nullify, since nullification is by its nature the rejection of such duty." Id.

We do not find error here. We do, however, question the need for the trial court to have commented on jury nullification at all and note that such a statement under another set of facts or circumstances could have easily resulted in a different outcome on review. Here, it appears the judge did recognize his poor choice of wording after the fact. However, he also clearly indicated his belief that the content of his comment on nullification was not improper in and of itself. Nullification is in the unique province of the jury and is not to be promoted or discouraged. Nicholas, 185 Wn. App. at 301. It is for this reason that we caution judges and practitioners alike as to any discussion of nullification. See Kleinman, 880 F.2d at 1031–33; Lynch, 903 F.3d at 1080; Nicholas, 185 Wn. App. at 301. Let the jury deliberate as they do; the power to nullify is uniquely within the province of the jury.

Finally, we accept the State's concession as to Martin's remaining assignment of error that the trial court, after finding Martin indigent, improperly imposed Department of Correction supervision fees pursuant to his community custody. The parties are correct that this was error under the plain language of RCW 9.94A.703(2)(d). Therefore, we affirm Martin's conviction, but remand for correction of the error as to the imposition of the community custody fees.

WE CONCUR:

_____
Coburn, J.

_____
Andrus, A.C.J.